[No. 48026-0-I. Division One. March 28, 2001.]

*In the Matter of the Dependency of* Q.L.M., *Respondent,*
THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

534

*Norm Maleng, Prosecuting Attorney,* and *David J.W. Hackett, Deputy*; and *Christine O. Gregoire, Attorney General,* and *Michael W. Collins, Assistant,* for appellant.

*Susan J. Craighead* (of *Public Defender Association*) and *Isaac S. Stephens* (of *Society of Counsel Representing Accused Persons*), for respondent.

AGID, C.J. — When the Department of Social and Health Services (DSHS) has custody of a juvenile offender who appears to be a sexually violent predator, the predator statute requires DSHS to forward all psychological evaluation and treatment records to the prosecutor to consider filing a predator petition. Q.L.M. is both a dependent child and juvenile sex offender who participated in sexually aggressive youth (SAY) evaluations through the dependency court. When DSHS planned to release the SAY evaluations to the prosecutor, the dependency court enjoined the release, finding Q.L.M. had an equitable interest in confidentiality. Because it is well settled that courts will not grant equitable relief in contravention of a statutory requirement, Q.L.M. had no clear legal or equitable right to confidentiality in the SAY evaluations, and the trial court erred in issuing an injunction barring DSHS from complying with the statute. We reverse.

FACTS AND PROCEDURAL HISTORY

Q.L.M., now 16, has been a dependent child since 1996. In 1999 when placement with Q.L.M.'s extended family became impossible, DSHS asked the dependency court to order a SAY evaluation to determine placement and treatment for him.[1] Q.L.M. participated in the evaluation. Two

---

[1] The term "sexually aggressive youth" is defined by a statute that provides funding for treatment and placement of abused youths who commit sexually violent acts. RCW 74.13.075. Before 1994, the term used was "at-risk juvenile sex

months later, the dependency court relied on *State v. Decker*[2] to enter a protective order regarding that evaluation. In addition to granting use immunity for information about unadjudicated crimes, the court's order provided that any information from the evaluation "shall not be disseminated to the King County Prosecutor" and limited dissemination within DSHS to the Division of Children and Family Services (DCFS).

In April 2000, Q.L.M. was living in a group placement through DSHS when he committed unlawful imprisonment with sexual motivation and two fourth degree assaults with sexual motivation against girls in the group home. He pleaded guilty and participated in another evaluation to determine if he was eligible for a special sex offender disposition alternative (SSODA). In October 2000, the court entered a manifest injustice disposition committing Q.L.M. to the Juvenile Rehabilitation Administration (JRA) for 36 weeks.

In anticipation of Q.L.M.'s release, the dependency court ordered a second SAY evaluation, followed it with another *Decker* order covering this evaluation, and DSHS referred his case to the End of Sentence Review Board. The Board reviewed the case and referred it to the King County Prosecutor's Office to consider filing a sexually violent predator petition. DSHS released most of its materials on Q.L.M. to the prosecutor. Although DSHS also intended to release the SAY evaluations, it gave Q.L.M.'s dependency counsel the opportunity to challenge the release.

Q.L.M. then sought injunctive relief in the dependency

---

offenders." Former RCW 74.13.075 (1992). Both the sexual predator commitment law and the SAY statute were enacted as part of the 1990 Community Protection Act (LAWS OF 1990, ch. 3). DSHS is required to investigate referrals that a child is a sexually aggressive youth. RCW 26.44.160. RCW 74.13.077 provides that DSHS is authorized to transfer any unused funds from the sexual predator civil commitment center to the division of children and family services to provide treatment for sexually aggressive youth.

[2] 68 Wn. App. 246, 842 P.2d 500 (1992), *review denied*, 121 Wn.2d 1016 (1993). *Decker* addresses the court's inherent authority to issue protective orders and affirmed a protective order granting a juvenile use immunity in a criminal case for information about unadjudicated crimes when the juvenile, who had been found guilty of a criminal offense, was compelled to participate in a predisposition psychological evaluation without his attorney present.

court to prevent DSHS from releasing the SAY evaluations and to forbid the prosecutor from using, considering or disseminating any other documents from the dependency proceedings. Counsel from both Q.L.M.'s dependency proceedings and his most recent criminal case filed affidavits stating that they were unaware that juveniles were subject to sexually violent predator commitment and had not warned Q.L.M. that SAY evaluations could be used in such a proceeding. The King County Prosecutor's Office was allowed to intervene in the dependency for purposes of contesting the requested injunction.[3]

The court issued an injunction prohibiting release of the SAY evaluations but allowed the prosecutor access to the other dependency records. The court rejected Q.L.M.'s constitutional and statutory arguments, but ruled that he had an equitable right to confidentiality.

The King County Prosecutor and DSHS appeal. The prosecutor moved for accelerated review because it asserts a need to consider the information in the SAY evaluations to decide whether to file a sexually violent predator petition before Q.L.M.'s release. A commissioner of this court granted the motion. We heard oral argument on an accelerated basis and issued an order reversing the trial court. This opinion follows.

## DISCUSSION

Detention of a sexually violent predator is a civil proceeding.[4] The Legislature has included juvenile sex offenders in the group subject to commitment as sexually violent predators.[5] If DSHS has a juvenile offender in custody who is about to be released and appears to be a sexually violent predator, the Department must refer the case to the pros-

---

[3] The parties dispute whether the prosecutor was actually able to participate in the hearing. Because we do not base our decision on the notice issue, we need not resolve it here.

[4] *In re Detention of Campbell*, 139 Wn.2d 341, 986 P.2d 771 (1999), *cert. denied*, 531 U.S. 1125, 121 S. Ct. 880 (2001); *In re Personal Restraint of Young*, 122 Wn.2d 1, 857 P.2d 989 (1993).

[5] RCW 71.09.030.

ecuting attorney in the county in which the juvenile was charged.[6] In such a case, the statute requires that DSHS, as the referring agency, "*shall* provide the prosecutor with all relevant information including . . . *[a]ll* records relating to the psychological or psychiatric evaluation and/or treatment of the person."[7]

■ Q.L.M. sought an injunction prohibiting DSHS from forwarding the SAY evaluations to the prosecutor. A party seeking injunctive relief must establish: (1) a clear legal or

---

[6] RCW 71.09.025 provides:

(1)(a) When it appears that a person may meet the criteria of a sexually violent predator as defined in RCW 71.09.020(1), the agency with jurisdiction shall refer the person in writing to the prosecuting attorney of the county where that person was charged, three months prior to:

(i) The anticipated release from total confinement of a person who has been convicted of a sexually violent offense;

(ii) The anticipated release from total confinement of a person found to have committed a sexually violent offense as a juvenile;

(iii) Release of a person who has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial pursuant to RCW 10.77.090(3); or

(iv) Release of a person who has been found not guilty by reason of insanity of a sexually violent offense pursuant to RCW 10.77.020(3).

(b) The agency shall provide the prosecutor with all relevant information including but not limited to the following information:

(i) A complete copy of the institutional records compiled by the department of corrections relating to the person, and any such out-of-state department of corrections' records, if available;

(ii) A complete copy, if applicable, of any file compiled by the indeterminate sentence review board relating to the person;

(iii) All records relating to the psychological or psychiatric evaluation and/or treatment of the person;

(iv) A current record of all prior arrests and convictions, and full police case reports relating to those arrests and convictions; and

(v) A current mental health evaluation or mental health records review.

(2) This section applies to acts committed before, on, or after March 26, 1992.

(3) The agency, its employees, and officials shall be immune from liability for any good-faith conduct under this section.

(4) As used in this section, "agency with jurisdiction" means that agency with the authority to direct the release of a person serving a sentence or term of confinement and includes the department of corrections, the indeterminate sentence review board, and the department of social and health services.

(Footnotes omitted.)

[7] RCW 71.09.025(b)(iii) (emphasis added).

equitable right; (2) a well-grounded fear of immediate invasion of that right; and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to that party.[8] The question whether or not to grant an injunction is addressed to the discretion of the trial court in accordance with the circumstances of each case.[9] The decision exercising that discretion will be upheld unless it is based upon untenable grounds, is manifestly unreasonable, or is arbitrary.[10]

Q.L.M. argued in the trial court that he had statutory, constitutional, and equitable rights to prevent the release of all dependency materials. Even though the court rejected the majority of Q.L.M.'s arguments and was aware of the statute mandating release of the records for use in predator filings, it nonetheless found an equitable right to prevent release of the SAY evaluations.

> His equitable right to the confidentiality of these records is based on the fact that a child in [Q.L.M.'s] position would have no idea that the SAY evaluations could be used for the purpose of filing a sexual predator petition, nor has there been any showing that he was advised by agents of the state of the potential use of these evaluations. A child who was advised by his attorneys that he should fully participate in the evaluations because he could get in no more trouble is entitled to rely on that implicit assurance. This reasonable reliance creates an equitable right to the confidentiality of these records. As a matter of fundamental fairness, this Court cannot ignore [Q.L.M.'s] reliance on the confidentiality of these evaluations.[11]

---

[8] *Waremart, Inc. v. Progressive Campaigns, Inc.*, 139 Wn.2d 623, 627, 989 P.2d 524 (1999); *King v. Riveland*, 125 Wn.2d 500, 515, 886 P.2d 160 (1994).

[9] *Wash. Fed'n of State Employees, Council 28 v. State*, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983).

[10] *King*, 125 Wn.2d at 515; *see also Brown v. Voss*, 105 Wn.2d 366, 372, 715 P.2d 514 (1986) (it is fundamental that a trial court is vested with broad discretionary power to shape and fashion injunctive relief to fit the particular facts, circumstances, and equities of the case before it).

[11] Br. of Appellant App. at 136 (findings of fact and conclusions of law, conclusion 2).

 The State relies on the well-settled rule that courts "will not give relief on equitable grounds in contravention of a statutory requirement" to argue that the injunction was contrary to law.[12] We agree that, because there is no statutory or constitutional basis for the order, it cannot be upheld.

Q.L.M. relies on *King v. Riveland*.[13] In that case, the Washington State Supreme Court held the equitable doctrine of promissory estoppel compelled the State to honor confidentiality agreements it had reached with inmates participating in sex offender treatment. When the Department of Corrections (DOC) instituted the Sex Offender Treatment Program in 1988, it asked participants to sign confidentiality agreements. In 1990, DOC revised the confidentiality agreements to warn inmates that the materials would not be confidential if the prosecutor considered a sexual predator filing. When DOC sought to apply the new policy retroactively, inmates who had been in the program before 1990 sought injunctive relief to prohibit DOC from violating the original confidentiality agreements. The trial court granted relief on the theory that the original agreement was an enforceable contract.

The Supreme Court rejected this theory, but found the confidentiality agreement enforceable under the equitable theory of promissory estoppel.[14] The Court rejected DOC's argument that enforcing the agreement would violate the sexual predator statutes. In so holding, the Court interpreted an earlier version of RCW 71.09.025 which did not

---

[12] *Longview Fibre Co. v. Cowlitz County*, 114 Wn.2d 691, 699, 790 P.2d 149 (1990) (citing *Dep't of Labor & Indus. v. Dillon*, 28 Wn. App. 853, 855, 626 P.2d 1004 (1981) (equitable principles do not provide a basis for equitable relief in derogation of statutory mandates)).

[13] 125 Wn.2d 500, 515, 886 P.2d 160 (1994).

[14] There are five prerequisites for promissory estoppel: "(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise." *King*, 125 Wn.2d at 506 (citations omitted).

require release of treatment records. After examining the legislative history, it concluded that the records were not within the scope of the statute. Thus, as interpreted by the Court, there was no conflict between the statutory mandate of RCW 71.09.025 and equitable enforcement of the confidentiality agreement.

One year after the *King* decision, the Legislature amended RCW 71.09.025 to require release of additional information. The amendment added the language at issue here, directing that the referring agency "shall" forward "[a]ll records relating to the psychological or psychiatric evaluation and/or treatment of the person" to the prosecutor.[15] This is a clear expression of the Legislature's intent to overrule the result in *King*.[16] As we noted above, equity cannot contravene a constitutional statute. Because Q.L.M. has not demonstrated that RCW 71.09.025 is unconstitutional, the statutory provision must prevail.[17] For this same reason other theories of equity, such as equitable estoppel, do not help Q.L.M. either.[18]

■ Q.L.M. has renewed the statutory arguments he made to the trial court. Like that court, we are not per-

---

[15] RCW 71.09.025(b)(iii).

[16] *See, e.g., State v. Rivas*, 126 Wn.2d 443, 896 P.2d 57 (1995) (recognizing from statutory amendment the Legislature's intent to overrule prior case law). *See also Richardson v. Seattle-First Nat'l Bank*, 38 Wn.2d 314, 229 P.2d 341 (1951) (recognizing Legislature overruled prior decision applying the principle of equitable estoppel by statutory enactment).

[17] Q.L.M. claims that a general constitutional right of privacy and substantive due process is implicated (citing *Griswold v. Connecticut*, 381 U.S. 479, 484, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965)). But he has cited no case law that makes the *Griswold* guarantee of reproductive freedom applicable to an unprivileged psychological evaluation of a sexually aggressive dependent child. Nor does his reliance on *State v. Miller*, 110 Wn.2d 528, 756 P.2d 122 (1988), advance his argument because *Miller* was a plea bargaining case based on "fundamental principles of due process." *Id.* at 532.

[18] We also question whether this case meets the requirements for promissory estoppel. Neither Q.L.M.'s lack of knowledge nor the State's failure to independently warn him of the risk that he might face a predator filing is a promise. The implicit assurance that Q.L.M.'s attorneys gave him that he could cooperate with the SAY evaluations and get in no further trouble presents a closer question. But unlike the head of the sex offender program in *King*, Q.L.M.'s attorneys were his agents, not agents of the State.

suaded. First he argues that the release of his SAY evaluations conflicts with the policy of confidentiality in the dependency and child welfare statutes. Thus, he argues, this court must construe RCW 71.09.025 to harmonize its meaning with those other statutes.

We perceive no conflict between RCW 71.09.025 and the statute regulating the confidentiality of dependency records, chapter 13.50 RCW.[19] Records produced by "any juvenile justice or care agency *may* be released to other participants in the juvenile justice or care system only when an investigation or case involving the juvenile in question is being pursued by the other participant."[20] "Juvenile justice or care agency" includes both "prosecuting attorney" and "department of social and health services and its contracting agencies."[21] Under the plain language of the dependency statute, the prosecutor is allowed access to dependency files because it is an included juvenile justice agency. Q.L.M. argues that this reading of RCW 13.50.100(3) is too broad because it could justify release of confidential information in circumstances that would make no sense, such as release of a child victim's records to a defense attorney. But the statute does not compel disclosure, it only permits it. Thus, it allows what RCW 71.09.025 requires: release of dependency records to the prosecutor considering a sexual predator filing. There is no conflict between the dependency confidentiality statutes and RCW 71.09.025.[22]

---

[19] RCW 13.50.100.

[20] RCW 13.50.100(3) (emphasis added).

[21] RCW 13.50.010(1)(a).

[22] Nor do the other statutes upon which Q.L.M. relies conflict with RCW 71.09.025. While dependency proceedings are generally closed to the public under RCW 13.34.115, the Supreme Court has rejected a broad reading of this statute, holding that appeals of dependency matters are not closed. *In re Dependency of J.B.S.*, 122 Wn.2d 131, 856 P.2d 694 (1993). And RCW 74.13.520 does not create an independent duty of confidentiality but instead provides a limitation on the disclosure of child welfare records under RCW 74.13.500, records not implicated in this case.

■ Q.L.M. also argues that the term "prosecuting attorney" in RCW 13.50.010 should be limited to the function a prosecutor performs when the juvenile is a victim or an offender, and should not include the prosecutor's role in filing or pursuing a sexually violent predator proceeding. But the Legislature has imposed no such limitation, and implying one would only create a conflict where none exists.

■ In the same vein, Q.L.M. argues that the term "agency" in RCW 71.09.025 should be read to refer only to the JRA. Thus the dependency files DSHS has would not be included in the materials to be forwarded to the prosecutor. But RCW 71.09.025(4) specifically defines the term "agency with jurisdiction" to be DSHS, not merely the JRA division of DSHS. The Legislature clearly could have applied the statute only to the JRA if that was what it meant, and we cannot ignore the language of the statutory definition.

■ As written, RCW 71.09.025 establishes that the Legislature intended to create an exception to the general policy that dependency records are confidential when DSHS refers a sexual predator case to the prosecutor.[23] The trial court correctly ruled that there was no statutory basis for the injunction.

Q.L.M. also argues that the *Decker* orders granted by the dependency court contributed to his reasonable reliance on confidentiality of the SAY evaluations. Although he acknowledges that the orders did not contemplate a sexual predator filing, he argues that they "completed the confidentiality shield protecting Q.L.M. in dependency court." Essentially, he renews his equitable argument by contending that he has a right to rely on an expectation of confidentiality created by the *Decker* orders. We reject this argument for two reasons. First, as stated above, equity

---

[23] Q.L.M.'s counsel conceded at oral argument that the statute requiring reporting crimes against children, RCW 26.44.030, operates as an exception to the statutory policy of confidentiality in dependency cases. There is no reason that RCW 71.09.025 should not operate in the same fashion. In neither case are the records being opened to the public. Their use in further proceedings is subject to rulings on motions in limine and protective orders in the trial court.

cannot contravene a clear statutory mandate. Second, the order issued in this case is not authorized by the holding in *Decker* and greatly exceeds the scope of the narrow exception approved in that case.[24]

In *Decker*, we recognized that the grant of immunity is normally a prosecutorial function. But we held that in certain limited circumstances a court has inherent authority to grant a protective order including use immunity. In that case, the juvenile court had ordered a psychological evaluation before an offender disposition. The court prohibited counsel from attending, but ordered that any discussion with the evaluator of unadjudicated crimes was protected by use immunity.[25]

Both parties argued on appeal that the trial court could not grant use immunity over the objection of the prosecutor. We acknowledged that the parties' concerns were legitimate but concluded that, under those circumstances, the trial court had inherent authority to issue a protective order:

> Here, the trial court was merely limiting the scope of the evaluation and attempting to fashion a means by which to protect Decker's Fifth Amendment rights. The protective order was not an attempt to interfere with the prosecutorial function. This is especially true because there were no charges pending against Decker. Also, the prosecutor would still be at liberty to prosecute matters which were discovered independently of the evaluation but which also may have been discussed during the evaluation, so long as those discussions did not lead to the discovery of any evidence.[26]

We recognize that the Fifth Amendment "not only permits a person to refuse to testify against himself at a

---

[24] The second protective order was much more narrowly drawn than the first and did not actually prohibit release of the material to the prosecutor, granting only derivative use immunity for incriminating statements. The first order purported to apply both retroactively and to all future counseling and treatment records, prohibiting their use for criminal investigation or prosecution. We discuss the first order here.

[25] *Decker*, 68 Wn. App. at 248.

[26] *Id.* at 252-53.

criminal trial, but also allows him not to answer official questions put to him in any other proceeding, civil or criminal, where the answer might incriminate him in future criminal proceedings."[27] Thus protective orders may be appropriate in some civil dependency cases. But *Decker* does not provide authority for the broad order entered in this case. *Decker* created a single narrow exception to the normal rule that granting immunity is a prosecutorial executive function. Any protective orders based on that exception should be narrowly tailored to meet the demands of the individual case.

The protective order here exceeds the order we approved in *Decker* in both scope and effect. It makes no distinction between adjudicated and unadjudicated matters and covers all information resulting from counseling or treatment whether it relates to a criminal offense or not. It thus exceeds the Fifth Amendment rationale of *Decker* and effectively prevents any future juvenile court judge from having access to information that could be useful in fashioning the best disposition for Q.L.M. The order also goes beyond a grant of use immunity and affirmatively banned the prosecutor from even receiving the materials.[28] As such, it impermissibly impinges on the prosecutorial function. Without access to the records, the prosecutor cannot even determine whether there is an argument that the information is admissible for adjudication or disposition over a

---

[27] *State v. King*, 130 Wn.2d 517, 523-24, 925 P.2d 606 (1996) (citing *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984), and *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973)). In the setting of a civil case, Fifth Amendment analysis requires consideration of whether a defendant's statements expose him to a "realistic threat of self-incrimination" in a subsequent proceeding and whether the State compelled the incriminating statements. *Id.* at 524 (citing *Murphy*, 465 U.S. at 426); *see also State v. Warner*, 125 Wn.2d 876, 889 P.2d 479 (1995); *State v. Jacobsen*, 95 Wn. App. 967, 977 P.2d 1250 (1999) (mere fact that juvenile was ordered to attend presentence evaluation did not render it "custodial" or "compelled" so as to make Fifth Amendment privilege self-executing).

[28] Ordinarily, the proper procedure would be to bring a motion before the trial court to prohibit or limit use of the information if and when the State tried to do so.

Fifth Amendment objection.[29]

We conclude that the trial court's grounds for issuing the permanent injunction were untenable because Q.L.M. failed to demonstrate any right to confidentiality that could contravene the clear mandate of RCW 71.09.025. The court therefore abused its discretion in issuing the injunction.

Reversed.[30]

GROSSE and KENNEDY, JJ., concur.

---

[29] The dependency court's first order also limited the dissemination of the material within DSHS to the DCFS caseworker. This prevented the JRA, the arm of DSHS charged with attempting to rehabilitate Q.L.M. for 36 weeks, from any access to any oral or written information from Q.L.M.'s dependency counseling, treatment or evaluation. We are unaware of any authority for such an order, particularly because it appears to contradict the rehabilitative purpose of the juvenile justice system.

[30] Q.L.M. filed two motions just before oral argument which were passed to the panel for decision. We grant the Motion to Supplement the Record and deny the Motion to Seal Portions of the Appellate Record.