[No. 29994-1-II. Division Two. April 27, 2004.]

*In the Matter of the Detention of* RAYMOND MARSHALL, *Appellant.*

*R.A. Lewis* (of *Knapp, O'Dell & Lewis*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Krista K. Bush, Assistant,* for respondent.

ARMSTRONG, J. — Raymond Marshall appeals an order confining him as a sexually violent predator. He argues that (1) the State failed to prove that he committed a recent overt act; (2) the court granted a continuance without good cause; (3) the State's expert witness (a) was not qualified to testify under RCW 71.09.040(4), (b) improperly based her opinion on confidential juvenile dependency records, (c) improperly based her opinion on inadmissible hearsay records, and (d) made improper detailed factual assertions based on hearsay; and (4) the State failed to prove the criteria for commitment. We affirm.

## FACTS

On November 6, 2000, the State filed a petition to have Marshall committed as a sexually violent predator. The certificate of probable cause included the opinion of Department of Corrections (DOC) psychologist Dr. Douglas Campbell that Marshall met the criteria for a chapter 71.09 RCW involuntary commitment. At the time, Marshall was

incarcerated for a 1995 third degree rape conviction. Following a probable cause determination, Dr. Linda Thomas, a psychologist, evaluated Marshall. The trial court then ordered Marshall to submit to a CR 35 evaluation by Dr. Charles Lund.

A few days before trial, Marshall successfully moved to strike Dr. Lund as a witness. The State then moved for a continuance in order to obtain a new expert witness. The court found that good cause existed and set trial for January 13, explaining that this was the closest date it had available. The State then hired Dr. Amy Phenix. She did not interview Marshall but instead conducted a record review.

At trial, Dr. Phenix testified that Marshall suffered from three sexually related mental abnormalities: pedophilia (sexually attracted to children, males and females, nonexclusive type), sexual sadism, and paraphilia not otherwise specified (nonconsenting adults or rape-like behavior). She testified about Marshall's criminal history, self-reported fantasies, a phallometric assessment, inappropriate sexual contacts that were not prosecuted, and his use of an anti-androgen drug to reduce his sexual drive and fantasies about children. She described Marshall's sexual fantasies of hurting, killing, and humiliating his sexual victims, especially young girls. And she described his admissions that he could not control his fantasy behavior and that children would not be safe if he was left alone in the community.

Dr. Phenix also testified that Marshall suffers from antisocial personality disorder. In explaining this diagnosis, she described Marshall's pattern of repeatedly violating others' rights, manipulating, lying, being noncompliant with rules, using drugs, and repeatedly sexually offending others.

Dr. Phenix opined that the combination of these mental abnormalities and antisocial personality disorder made it highly likely that Marshall would commit another sexually violent offense if not confined in a secure facility. In reaching this conclusion, she conducted a sex offender risk assessment using actuarial instruments commonly used in

the profession. On one such instrument, the Static 99, where a score of 6 or greater would indicate high risk, Marshall received a score of 10 out of 12. She considered empirical factors, which showed a high degree of sexual deviance. She considered that Marshall had not had adequate treatment and had been terminated from treatment for propositioning other prison residents and hiding sexually explicit materials in his cell. And she considered Marshall's recent disciplinary sanction for having children's pictures in his cell that he used for masturbatory purposes.

Officer Jeff Young, a custody officer that escorted Marshall to trial, testified that Marshall told him that he wanted to stay at the Special Commitment Center and warned him, "your children aren't safe." Report of Proceedings (RP) at 228-29.

The trial court determined that Marshall was a sexually violent predator and entered an order committing him.

ANALYSIS

1. <u>Recent Overt Act</u>

█ To commit Marshall as a sexually violent predator, the State had to prove (1) he committed a "sexually violent offense"; (2) since his release from confinement for that offense, he committed a "recent overt act"; and (3) due to mental abnormalities or personality disorders, he is likely to engage in predatory acts of sexual violence if not confined in a secure facility. RCW 71.09.030(5), .020(7); *In re Det. of Broten*, 115 Wn. App. 252, 255, 62 P.3d 514, *review denied*, 150 Wn.2d 1010 (2003).

Marshall has a 1989 conviction for the first degree child molestation of a six-year-old girl, which is a sexually violent offense. At that time, he was also convicted of communicating with an eleven-year-old minor boy for immoral purposes. In 1992, he was convicted of communicating with a nine-year-old girl for immoral purposes. And in 1996, he

was convicted of third degree rape and was incarcerated for this offense when the State filed the current petition.

Marshall argues that since he was released from confinement after serving his confinement for a sexually violent offense, the State needed to plead and prove that he committed a recent overt act.

RCW 71.09.020(10) defines "[r]ecent overt act" as: "any act or threat that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm in the mind of an objective person who knows of the history and mental condition of the person engaging in the act."

He argues that the State cannot rely on his 1996 third degree rape conviction because that was not sexually violent and, in fact, is not even a violent offense. He argues that the State is precluded from arguing now that that offense involved force when it chose not to charge him with second degree rape (forcible compulsion).

The State argues that because Marshall was confined at the time it filed this petition for an offense constituting a recent overt act, it did not need to plead or prove any additional act demonstrating Marshall's dangerousness. It relies on *In re Detention of Hendrickson*, 140 Wn.2d 686, 688-89, 2 P.3d 473 (2000), where the court held:

> We are now asked to decide whether chapter 71.09 RCW or due process requires proof of a recent overt act when an individual has, at some point, been previously released into the community but is incarcerated on the day a sexually violent predator petition is filed. We hold no proof of a recent overt act is constitutionally or statutorily required when, on the day the petition is filed, an individual is incarcerated for a sexually violent offense, RCW 71.09.020(6), or *an act that by itself would have qualified as a recent overt act, RCW 71.09.020(5).*

(Emphasis added.) The State argues that the 1995 rape meets the definition of a recent overt act and thus it was not required to plead or prove a recent overt act at trial.

We agree with the trial court that if the recent overt act had to be a sexually violent offense, there would be no need

for the "objective" prong in the legislature's definition of recent overt act. As the trial court explained:

> Well, I think that under the definition, it says act. So, I think we have to look at the recent overt act. And it's all four corners of the act itself. And would it create a reasonable apprehension if I had known this guy had done X, Y and Z before.
>
> Yeah, and it's a rape. It's not like it's a victimless crime or a theft crime. It has nothing to do with—which had nothing to do with the sex.
>
> This is a good—there's a nexus between the act and sex. There's a background of forcible compulsion or compulsion or force, because she did say no. And knowing the background and nature and history, I think it would qualify as a recent overt act.

RP at 107.

It was proper for the trial court to consider the circumstances involved in the 1995 rape in deciding whether it amounted to a recent overt act. Marshall's 1996 conviction was for having nonconsensual sexual intercourse with a 21-year-old developmentally disabled woman who functioned at a 10- to 12-year-old level. Certainly, this nonconsensual sexual act would have created a reasonable apprehension of sexually violent harm in the mind of an objective person who knew of Marshall's history and mental condition. The court did not err in concluding that this was a recent overt act.

Marshall cites *In re Detention of Davis*, 109 Wn. App. 734, 37 P.3d 325 (2002), *review denied*, 150 Wn.2d 1002 (2003); *In re Detention of Albrecht*, 147 Wn.2d 1, 51 P.3d 73 (2002); and *In re Detention of Broten*, 115 Wn. App. 252. But these cases differ significantly in that each respondent was incarcerated for violating conditions of release and thus the violations had not been proved beyond a reasonable doubt as had Marshall's 1995 rape. As we noted in *Broten*, "Due process concerns would arise if the State sought to have the violations hearing judge find that the defendant's conduct amounted to a recent overt act. Broten is entitled to a jury determination of his status as a sexually violent predator

and the burden of proof is beyond a reasonable doubt." *Broten*, 115 Wn. App. at 257 n.3 (citing RCW 71.09.050(3), .060(1)). Here, not only was Marshall's a bench trial, but the alleged recent overt act was a rape conviction that had been proved beyond a reasonable doubt in a prior hearing. The record supports the trial court's finding that this conviction was a recent overt act; the State did not need to prove an additional act.

2. Continuance

Marshall next argues that the trial court erred in granting a continuance beyond the allowable 45 days after the probable cause hearing. *See* RCW 71.09.040. He opposed the State's motion for a continuance, arguing that the unavailability of the State's witness was not good cause.

We review an order granting a continuance for an abuse of discretion. *In re Det. of G.V.*, 124 Wn.2d 288, 295, 877 P.2d 680 (1994) (citations omitted). RCW 71.09.050(1) gives the trial court authority to continue a sexually-violent-predator trial. It provides, in part: "The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced."

The court found that good cause existed because the State was prepared to go to trial until three days beforehand when Marshall successfully moved to exclude the State's expert witness based on the then new decision in *In re Detention of Williams*, 147 Wn.2d 476, 55 P.3d 597 (2002) (precommitment CR 35 examinations not allowable in sexually-violent-predator trials).

Marshall argues that good cause did not exist because two other psychologists had evaluated him for the State and the State failed to show that neither was available to testify. But the State explained that Dr. Thomas was not their expert witness and that they were entitled to an expert under *In re Pers. Restraint of Young*, 122 Wn.2d 1, 57-59, 857 P.2d 989 (1993). The State also explained that

Dr. Campbell was a DOC psychologist, not an expert witness, who evaluated Marshall solely to determine whether probable cause existed to hold Marshall as a sexually violent predator. The trial court explained:

[N]ow they're out an expert . . . not the Department of Corrections, who is obligated to file this.

So, I agree that since we are going to kick out Dr. Lund, entirely . . . that they're entitled to have another expert to replace Dr. Lund, who would not be a CR 35, but purely an opinion based upon the records, I guess. He wouldn't be able to examine Mr. Marshall.

RP at 67. Furthermore, the trial court denied the State's request to set a March trial date and found that the first available date it had, close to 45 days out, was January 13. Under these circumstances, we cannot say that no reasonable judge would have taken the same position and, thus, there was no abuse of discretion.

3. Admission of Expert Testimony

(a) Qualifications under RCW 71.09.040(4)

Marshall next argues that the State's expert, Dr. Amy Phenix, was not qualified to conduct a sexually-violent-predator examination or to testify. He argues that RCW 71.09.040(4) and RCW 71.09.050(2) mandate that such an expert meet Department of Social and Health Services (DSHS) qualifications and one such qualification is that the person be "licensed as a doctor of psychology . . . [under] chapter 18.83 RCW." WAC 388-880-010.

Chapter 18.83 RCW provides that psychologists must obtain a license in order to practice psychology in this state. RCW 18.83.020. The chapter also provides that persons not licensed in Washington may obtain a temporary permit in order to practice. RCW 18.83.082.

But Marshall argues that RCW 71.09.040(4) does not mention temporary permits and thus Dr. Phenix did not qualify. *See State v. Refuerzo*, 102 Wn. App. 341, 347, 7 P.3d 847 (2000) ("Where a statute specifically designates the things or classes of things upon which it operates, an

inference arises that all things or classes of things omitted were done so intentionally.") (citing *Landmark Dev., Inc. v. City of Roy*, 138 Wn.2d 561, 571, 980 P.2d 1234 (1999)).

The State responds that Dr. Phenix is eminently qualified to testify as an expert and has done so in many other cases. And it argues that RCW 71.09.040(4) does not limit the pool of experts the State may call at trial, which provides, in part, "The evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination pursuant to rules developed by the department of social and health services."

■■ In our view, it makes little sense that a person licensed in another state and approved by the licensing board to practice on a temporary basis could actively practice in this state but not be qualified to perform a sexual deviancy evaluation.[1] Testimony established that Dr. Phenix was highly qualified and had testified several times before in this State and many times before in other states as an expert. The trial court did not abuse its discretion in finding that her expert testimony would assist it in determining whether to commit Marshall. *See State v. Ortiz*, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992) (abuse of discretion standard applies to decision to admit expert testimony).

■ Further, the State argues and we agree that Dr. Phenix did not perform a RCW 71.09.040(4) evaluation. Rather, the State retained her as an expert witness to give an evaluation based on evaluations done by other psychologists, such as Dr. Thomas. This being the case, the limitation in WAC 388-880-010 simply does not apply to Dr. Phenix.

(b) Use of Confidential Records

■ Dr. Phenix reviewed police reports, court records, psychological and psychiatric reports, juvenile records, de-

---

[1] Which may explain the 2003 version of WAC 388-88-010: "(2) 'Psychologist' means a person licensed as a doctor of psychology in this state, or licensed or certified in another state, in accordance with chapter 18.83 RCW."

partment of corrections records, and medical records. The juvenile records were California State records evidencing Marshall's status as a dependent child in the late 1980s. Dr. Phenix considered material from these California records about Marshall's sexual contact with a younger child.

RCW 71.09.025(1)(b) governs the information available in a sexually violent predator proceeding:

> (b) The agency shall provide the prosecutor with all relevant information including but not limited to the following information:
>
> (i) A complete copy of the institutional records compiled by the department of corrections relating to the person, and any such out-of-state department of corrections' records, if available;
>
> (ii) A complete copy, if applicable, of any file compiled by the indeterminate sentence review board relating to the person;
>
> (iii) All records relating to the psychological or psychiatric evaluation and/or treatment of the person;
>
> (iv) A current record of all prior arrests and convictions, and full police case reports relating to those arrests and convictions; and
>
> (v) A current mental health evaluation or mental health records review.

Marshall argues that the prosecutor was not authorized to disseminate private records to a private party and that Dr. Phenix should not have been allowed to review illegally disseminated records. The trial court denied Marshall's motion to exclude any reliance or reference to his California juvenile records, reasoning that no conflict existed between the dependency confidentiality statutes and the RCW 71.09.025(1)(b) requirement that DSHS forward all psychological evaluations to the prosecutor. The court relied on *In re Dependency of Q.L.M.*, 105 Wn. App. 532, 20 P.3d 465 (2001).

In *Q.L.M.*, the trial court issued an injunction prohibiting DSHS from forwarding sexually aggressive youth evaluations to the prosecuting attorney for use in a sexually

violent predator proceeding. Division One reversed the order, finding that RCW 71.09.025 acted as a statutory exception to the confidentiality provisions of dependency records. *Q.L.M.*, 105 Wn. App. at 541-42.

Marshall appears to argue that the prosecutor could obtain these juvenile dependency records legally but that it could not provide them to its chosen expert witness. We know of no authority for such a proposition as the purpose of disseminating the records to the prosecutor is to assist him in deciding to pursue or in proving that the respondent is a sexually violent predator. It would make no sense to provide these materials to the prosecutor and then forbid him from using them at trial. *See also* RCW 4.24.550(1) (Public agencies may "release information to the public regarding sex offenders and kidnapping offenders when the agency determines that disclosure of the information is relevant and necessary to protect the public and counteract the danger created by the particular offender.").

(c) <u>Reliance on Inadmissible Hearsay</u>

Marshall next complains that Dr. Phenix did not testify from personal knowledge but based her opinions on inadmissible hearsay.

ER 703 provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

The comment to this rule explains:

This rule is the same as Federal Rule 703. The first sentence codifies the universally accepted principle that an expert may base an opinion on (1) firsthand information or (2) facts or data presented to him at trial and is consistent with previous Washington law. See 5 R. Meisenholder, Wash. Prac. §§ 354, 355 (1965 & Supp.). *The second sentence allows an expert to base an opinion on data which could not be admitted in*

*evidence provided it is of the type reasonably relied upon by experts in forming opinions upon the subject in their particular field of competence.* Before an expert will be permitted to testify upon the basis of facts not admissible in evidence, the court will have to find pursuant to rule 104(a) that the particular underlying data is of a kind that is reasonably relied upon by experts in the particular field in reaching conclusions. If there is a serious issue the trial judge will examine the expert outside the presence of the jury to determine whether these conditions are met. Since rule 703 is concerned with the trustworthiness of the resulting opinion, the judge should not allow the opinion if the expert can show only that he customarily relies upon such material or that it is relied upon only in preparing for litigation. *The expert must establish that he as well as others would act upon the information for purposes other than testifying in a lawsuit.* 3 J. Weinstein, *Evidence* ¶ 703[01] (1975).

*The expert will ordinarily be in the best position to know what data can be reasonably relied upon, and the court will usually follow the expert's advice on the point.* The court's decision will, to a large extent, be based on the degree of confidence it has in the professional caliber and ethics of the expert group involved. Physicians are likely to be given more leeway than accidentologists. 3 J. Weinstein, *Evidence* ¶ 703[01].

(Emphasis added.)

Dr. Phenix testified that this is the type of data usually relied on in forming an opinion.

This case is similar to *In re Dependency of Young* where the Court observed:

Both experts for the State here relied on psychological reports and criminal history of petitioners. They testified that these are the types of materials reasonably relied on to diagnose future dangerousness of sex offenders. Indeed, in the face of petitioners' refusals to cooperate, no other course was open to the State's experts.

*Young*, 122 Wn.2d at 58.

But Marshall argues that Dr. Phenix relied on these records only for purposes of litigation and thus their reliability and admissibility was not established. *State v.*

*Ecklund*, 30 Wn. App. 313, 318, 633 P.2d 933 (1981) (upheld admission of expert opinion based on laboratory report because other experts relied on such reports in reaching conclusions and the procedures and data were used for purposes other than litigation). *Accord State v. Nation*, 110 Wn. App. 651, 662-63, 41 P.3d 1204 (2002) (admission of supervisor's expert opinion controlled substances test results performed by lab technician), *review denied*, 148 Wn.2d 1001 (2003). The issue is not whether Dr. Phenix relied on these records for the purposes of litigation alone. She testified that other professionals relied on these types of records for treatment and evaluation. We find no error in the trial court's conclusion that Dr. Phenix established that these reports were used for purposes other than litigation.

(d) Factual Assertions

 Marshall complains that Dr. Phenix related inadmissible hearsay as factual assertions. But the trial court allowed the testimony, not as substantive evidence but to show the bases for Dr. Phenix's expert opinion. This was permissible under ER 705, which permits the court to allow the expert to relate the hearsay to the fact finder to explain the reasons for her opinion.

4. Sufficiency of the Evidence

 Marshall argues that without Dr. Phenix's testimony, no other evidence supports the State's case and thus the State has not met its burden of proof. But we have found no error in the admission of Dr. Phenix's testimony and it was sufficient, viewing it in a light most favorable to the State, to show that Marshall was a sexually violent predator. *See In re Det. of Thorell*, 149 Wn.2d 724, 72 P.3d 708 (2003) (criminal law standard of review applies).

The evidence showed that Marshall had a previous conviction for sexual violence, that he was incarcerated for another sex offense, that he had a history of inappropriate sexual contacts and convictions, that he suffered from three mental abnormalities and a personality disorder and that these abnormalities and this disorder made it likely that he

would engage in predatory acts of sexual violence if he were not confined in a secure facility. Testimony established that even Marshall recognized his inability to control his own behavior. This evidence was sufficient to support the commitment order.

We affirm.

SEINFELD and HUNT, JJ., concur.

Review granted at 153 Wn.2d 1001 (2005).