IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 73223-4-I |
| | ) | |
| ROBERT LOUGH, | ) | DIVISION ONE |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: November 7, 2016 |

BECKER, J. — The State's evidence was sufficient to civilly commit the

appellant as a sexually violent predator. The appellant's rights were not violated

when his sexually violent predator trial was stayed pending the resolution of

criminal proceedings against him and while he served the resulting criminal

sentence. We affirm.

## FACTS

In 1986, appellant Robert Lough was convicted of first degree rape and

attempted murder of a young woman he picked up in a tavern and left to die on

the side of the road after stabbing her repeatedly through her vagina. He was

sentenced to 30 years in prison.

On August 5, 2009, two days before Lough's scheduled release from

prison, the State filed a petition to commit him as a sexually violent predator.

The court found that probable cause existed to believe Lough is a sexually

violent predator. The court ordered him remanded to the custody of the special commitment center.

Lough was detained at the special commitment center pending his trial. On May 22, 2010, while awaiting trial, Lough assaulted one of his fellow detainees at the special commitment center. Lough was charged with assault in the second degree in Pierce County and was transferred from the special commitment center to county jail. The court granted the State's motion to stay Lough's sexually violent predator proceedings pending the outcome of the criminal case in Pierce County.

In Pierce County, Lough pleaded guilty to assault in the third degree. He was returned to prison. On November 9, 2011, upon motion of the State, the court continued the stay of the sexually violent predator proceedings "until such time Lough is released from the Department of Corrections and appears before this court." Lough was released from prison and returned to the special commitment center on October 17, 2013.

On February 4, 2014, Lough moved to dismiss the sexually violent predator petition on the ground that the delay in his trial violated his statutory and constitutional rights to a speedy trial. The trial court denied the motion.

After a trial in January and February 2015, the jury unanimously found that Lough is a sexually violent predator. The court ordered him civilly committed. Lough appeals the order of commitment.

## STAY OF PROCEEDINGS

Lough contends that his constitutional and statutory rights were violated when the court stayed the sexually violent predator proceedings while the criminal proceedings in Pierce County were pending and again while he was serving the resulting sentence.

Under Washington's sexually violent predator statute, the court shall, within 45 days after the probable cause hearing, conduct a trial to determine whether the person is a sexually violent predator. RCW 71.09.050(1). But the trial "may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced." RCW 71.09.050(1).

Because Lough is claiming his rights under RCW 71.09.050 were violated, we will analyze the "stays" as continuances under this statute. We can affirm the trial court on any basis supported by the record and the law. Bldg. Indus. Ass'n of Wash. v. McCarthy, 152 Wn. App. 720, 744, 218 P.3d 196 (2009).

An order granting a continuance of a sexually violent predator trial beyond the statutory 45-day period is reviewed for an abuse of discretion. In re Det. of Marshall, 122 Wn. App. 132, 140, 90 P.3d 1081 (2001), aff'd, 156 Wn.2d 150, 125 P.3d 111 (2005).

The court first stayed Lough's proceedings on August 26, 2010, pending resolution of the criminal proceedings against him in Pierce County. At the time, the State pointed out that Lough would have had a Fifth Amendment privilege not to answer questions about the assault in forensic interviews if the civil proceeding

3

had gone forward. This could have created problems for Lough if his refusal to answer was used as an adverse inference in the civil trial. Also, if Lough had been convicted of second degree assault as charged, he would have faced a sentence of life without parole, rendering the civil commitment proceedings moot. The State also pointed out that Lough was being held at the Pierce County jail until completion of his criminal case and that Pierce County had refused to comply with a recent transport order. Under these circumstances, the trial court did not abuse its discretion in finding good cause for the continuance.

Lough was convicted of third degree assault in Pierce County and was returned to prison. At that time, the trial court continued the stay of the sexually violent predator proceedings until Lough completed his sentence and was released from the Department of Corrections. This procedure is authorized by the pertinent statutes. A criminal defendant sentenced to over one year in custody must serve that sentence in a state prison facility. RCW 9.94A.190(1). On the other hand, a person facing civil commitment as a sexually violent predator must be held at the special commitment center in the custody of the Department of Social and Health Services pending trial. RCW 71.09.040(4). The sexually violent predator statute provides that "a person subject to court order under the provisions of this chapter who is thereafter convicted of a criminal offense remains under the jurisdiction of the department and shall be returned to the custody of the department following: (1) completion of the criminal sentence; or (2) release from confinement in a state, federal, or local correctional facility." RCW 71.09.112. Consistent with these statutes, Lough was properly

4

returned to the department's custody after he completed his sentence and was released from state prison.

Lough does not point to any prejudice that resulted from either stay of proceedings. In March 2014, Lough stated that he was not ready to proceed with the trial and asked for a continuance. We conclude Lough's statutory right to a prompt trial under RCW 71.09.050(1) was not violated.

The Washington Constitution provides that "justice in all cases shall be administered . . . without unnecessary delay." WASH. CONST. art. 1, § 10. To the extent that Lough argues this provision was violated, the stay in Lough's sexually violent proceedings was necessary, for the reasons detailed above. See, e.g., King v. Olympic Pipeline Co., 104 Wn. App. 338, 362, 16 P.3d 45 (2000) (emphasizing the word "unnecessary"), review denied, 143 Wn.2d 1012 (2001). Lough's constitutional rights were not violated when the court ordered that the sexually violent predator proceedings be stayed.

WITNESS EXCLUSION

The State moved in limine to exclude witnesses. Lough did not object, and the court granted the motion. Lough then asked the court for approval to "apprise our experts" of testimony given by Dr. Richard Packard, the State's expert witness, "so they can comment on things he may have raised." The court responded, "I don't think so. I don't think it is productive. At this point, I think Dr. Packard's opinions are out there. His reports are out there. His long, long, long deposition is out there. They can read those things. I don't think they need to be

[in] this court." Lough contends that the court's denial of his request to apprise his experts of Dr. Packard's testimony denied him his right to present a defense.

"At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses." ER 615. The exclusion of witnesses from the courtroom is a matter within the discretion of the trial court, and any decision to exclude witnesses will not be disturbed absent a manifest abuse of discretion. State v. Weaver, 60 Wn.2d 87, 90, 371 P.2d 1006 (1962). Specifically, the exemption of certain witnesses from the exclusion is a question within the discretion of the trial court. Weaver, 60 Wn.2d at 90.

Given that Dr. Packard's opinions had already been made available to Lough and his experts, Lough has not persuasively explained how the ruling denied him his right to present a defense. Lough's expert witnesses testified at length about Dr. Packard's opinions, including his diagnosis of Lough, his clinical judgment and the actuarial instruments that he used. The trial court did not abuse its discretion in denying Lough's request to apprise his experts of Dr. Packard's testimony.

## DIFFICULTY CONTROLLING BEHAVIOR

A sexually violent predator is defined as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). Lough contends the record contains insufficient evidence to support the various components of this definition.

6

As a matter of constitutional due process, a finding of dangerousness required by a sexually violent predator statute must be linked to the existence of a mental abnormality or personality disorder that makes it seriously difficult for the person with the abnormality or disorder to control his behavior. Kansas v. Crane, 534 U.S. 407, 410, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002).

To be consistent with Crane, the Washington Supreme Court holds that the fact finder in a sexually violent predator trial must determine that the person facing commitment has serious difficulty controlling behavior, although there need not be a separate finding to that effect. In re Det. of Thorell, 149 Wn.2d 724, 731, 742, 72 P.3d 708 (2003), cert. denied, 541 U.S. 990 (2004).

> If the existence of this link is challenged on appeal, this case specific approach requires the reviewing court to analyze the evidence and determine whether sufficient evidence exists to establish a serious lack of control, as we do below.
> We base our conclusion on the Supreme Court's lengthy discussion of the impracticability of giving "lack of control" a narrow or technical meaning, and the Court's recognition of the need to proceed contextually.

Thorell, 149 Wn.2d at 736. Lough contends the diagnoses discussed by Dr. Packard—antisocial personality disorder, post-traumatic stress disorder, and a substance abuse disorder—are all constitutionally insufficient to support commitment because they do not cause a person to lose the ability to choose to commit sexually violent acts.

To determine the sufficiency of the evidence, the test in criminal cases is used: "when viewed in the light most favorable to the State, there must be sufficient evidence in the finding of mental illness to allow a rational trier of fact to conclude the person facing commitment has serious difficulty controlling

7

behavior." Thorell, 149 Wn.2d at 744-45. The evidence need not rise to the level of demonstrating the person is completely unable to control his behavior. Thorell, 149 Wn.2d at 742; see also In re Det. of Audett, 158 Wn.2d 712, 727-28, 147 P.3d 982 (2006).

Dr. Packard testified that Lough suffered from a personality disorder and a mental abnormality as defined in RCW 71.09.020(18). Dr. Packard diagnosed Lough with antisocial personality disorder with paranoid traits. He diagnosed Lough with post-traumatic stress disorder and several substance abuse disorders, including cannabis, alcohol, stimulant and opioid abuse.

Dr. Packard explained how antisocial personality disorder, when combined with the triggering that occurs with post-traumatic stress disorder and the disinhibition that occurs with substance abuse, can result in serious difficulty controlling sexually violent behavior:

> One of the characteristics of post-traumatic stress disorder is that people can get triggered and they have the reactions that result from that.
> One of those reactions can be an intense outpouring of emotion, and can be a rage directed towards the person who may have triggered that.
> With the substance abuse problems, that further results in disinhibiting his behavior. Even the controls he may have had are otherwise also influenced when the presence of substances are there.
> The role of the personality disorder is that even people who may have such experiences but are properly inhibited and are properly socialized, they will not act those out on other people.
> People with antisocial personality disorder don't have those barriers and inhibitions. Characterization of the disorder is the willingness to violate the boundaries of other people and to be irritable, hostile, and aggressive.

Dr. Packard testified that sex offenders with post-traumatic stress disorder "often report that it's uncontrolled; that the emotional response takes them over. One of the other phenomena with post-traumatic stress disorder is the tendency to dissociate. . . . so they then are engaging in the behavior sort of automatically, . . . and not necessarily being able to control it."

Dr. Packard testified that the brutal crime committed by Lough in 1986 and the assault Lough committed on another detainee in 2010 were, by Lough's own description, consistent with uncontrollable behavior triggered by post-traumatic stress disorder:

> If someone is stimulated, if they have associated a particular trigger or a set of triggers. Perhaps a person rejects them—and this is how Mr. Lough has talked about it—so maybe the trigger was when [the victim in the 1986 rape and attempted murder] rejected him and then that resulted in the anger and the outpouring of the emotion and the rage, and then that became expressed in the violent rape and assault of [the victim] and then the subsequent mutilation of [the victim] taking place in a way that was automatic as a result of the trigger.
>
> He describes himself at one point, in one of the instances with the person at SCC [special commitment center], that, "I was like on auto-pilot." That's a very common expression of people with post-traumatic stress disorder when they're engaging in behavior that they feel they have little control over. It's, "I was on auto-pilot. I can't explain why I did that."

Dr. Packard also explained the connection between substance abuse and lack of control. He testified that substance abuse results in disinhibition because the substances affect parts of the brain that otherwise would have prevented certain behaviors. He testified that "the effectiveness of the brain to stop it from happening is actually decreased."

According to Dr. Packard's testimony quoted above, these disorders affected Lough by making it seriously difficult for him to control his behavior. The jury was entitled to believe the testimony of the State's expert witness. In re Det. of Post, 145 Wn. App. 728, 757, 187 P.3d 803 (2008), aff'd, 170 Wn.2d 302, 241 P.3d 1234 (2010). To the extent that Lough's expert witnesses disagreed with Dr. Packard, this conflict was for the jury to resolve. See Thorell, 149 Wn.2d at 756 (differences in expert testimony go to the weight of the evidence).

Lough contends the evidence showed him to be a person who has the ability to control his sexually violent impulses and chooses not to. Viewed in the light most favorable to the State, the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Lough has seriously difficulty controlling his behavior. We reject Lough's argument that the evidence shows only that he is a person who willingly chooses to violate social norms.

## RISK ASSESSMENT

A sexually violent predator is defined, in relevant part, as a person who is "likely to engage in predatory acts of *sexual* violence if not confined in a secure facility." RCW 71.09.020(18) (emphasis added). Lough again challenges the sufficiency of the evidence. He argues that the State proved only that he was likely to engage in acts of general violence, not specifically acts of sexual violence as the statute requires.

Dr. Packard testified that Lough is likely to engage in predatory acts of sexual violence if not confined in a secure facility. He came to this opinion based

on actuarial assessments, dynamic risk factors, and a clinical assessment of Lough.

Regarding the actuarial assessments, the Static-99 predicted that Lough would have a 20.5 percent chance of being reconvicted for a new sexual offense within 5 years and 37.3 percent within 10 years. Results of the Violence Risk Appraisal Guide-Revised (VRAG-R) showed that 76 percent of the people who were in the same scoring bin as Lough were returned to a secure facility for a new violent offense, including sexual offenses, within 5 years, and 90 percent were returned within 15 years.

In assessing the risk, Dr. Packard also considered dynamic risk factors, which are not included in the actuarial assessments and are subject to change. Dr. Packard testified that the dynamic risk factors present in Lough's case include sexualized violence (in this case describing an interest or preference for coercive sex over consenting sex), a lack of emotionally intimate relationships with adults, lifestyle impulsiveness, poor problem solving, resistance to rules and supervision, and negative social interactions.

When asked directly how it can be known that Lough is likely to commit an act of sexual violence rather than just violence, Dr. Packard explained: "I don't see those as a mutually exclusive circumstance. I would—so his possibility of violence is certainly there. The possibility of sexual violence is also very likely there. It depends on the matter of what kind of stimuli, what kind of triggers may be present, and who would be around him at the time. If a male is doing that and

11

is there, it will probably be violence. If it's a female, it would more likely be manifested as sexual violence."

Lough argues that the actuarial assessments were insufficient to meet the State's burden. But the State did not rely on the actuarial instruments alone. Dr. Packard explained that no actuarial instrument is specifically designed to predict whether a person is likely to commit future predatory acts of sexual violence over a lifetime, so he could not rely solely on actuarial instruments. The State relied on the testimony of Dr. Packard, who, as described above, formed his clinical judgment based on the actuarial instruments along with consideration of the dynamic risk factors and a clinical evaluation.

Lough also argues that Dr. Packard's clinical judgment was insufficient. However, experts may resort to their clinical judgment when assessing the risk that a sexual offender will reoffend. See In re Pers. Restraint of Meirhofer, 182 Wn.2d 632, 645-46, 343 P.3d 731 (2015); Thorell, 149 Wn.2d at 755-56.

Viewed in the light most favorable to the State, the evidence was sufficient for the jury to find that Lough was likely to engage in predatory acts of sexual violence if not confined in a secure facility as required by RCW 71.09.020(18).

INSUFFICIENT DIAGNOSIS

Lough contends that the State failed to establish that he "suffered from a medically recognized disorder which justifies commitment." "Sexually violent predator" is defined, in relevant part, as a person "who suffers from a mental abnormality or personality disorder which makes the person likely to engage in

12

predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

Lough argues that any one of his diagnoses, standing alone, is insufficient to justify commitment, so the State should not be able to add them all together and commit him on that basis. He contends that neither post-traumatic stress disorder nor substance abuse may serve as a basis for commitment because they are not the kind of abnormality or disorder that causes sexual violence.

As detailed in the sections above, the State presented sufficient evidence that Lough's diagnosed mental abnormalities and personality disorder worked together to make him likely to engage in predatory acts of sexual violence if not confined in a secure facility and that he had serious difficulty controlling his behavior. He cites no authority for the proposition that an alleged sexually violent predator must be committed based on one personality disorder or mental abnormality alone. We agree with the State's assessment that sufficient evidence is found in Dr. Packard's testimony that it was "the combination of disorders and other psychological and neurological features that comprise Lough's mental abnormality." Dr. Packard's testimony does not imply, nor do we hold, that a recidivist sex offender may be committed as a sexual predator solely on the basis of evidence that he has post-traumatic stress disorder or a substance abuse disorder.

We conclude the evidence is sufficient to prove Lough suffers from a mental abnormality that justifies commitment.

## ADMISSIBILITY OF VRAG-R

Lough unsuccessfully moved in limine to exclude the VRAG-R, arguing that its admission violated Evidence Rules 401, 403, and 702. Lough now contends that the trial court should have excluded the use of the VRAG-R actuarial instrument because it is inadmissible under Frye v. U.S., 293 F. 1013 (D.C. Cir. 1923). When a party fails to raise a Frye argument below, a reviewing court need not consider it on appeal. In re Det. of Post, 145 Wn. App. at 755-56; In re Det. of Taylor, 132 Wn. App. 827, 134 P.3d 254 (2006), review denied, 159 Wn.2d 1006 (2007). Because Lough did not raise a Frye argument below, we decline to consider it.

Lough also contends that the VRAG-R is inadmissible under Evidence Rules 402 and 403. He takes issue with the fact that the VRAG-R includes all violent offenses, not just predatory acts of sexual violence as the sexually violent predator statute requires. For this reason, he argues, the VRAG-R is not relevant, and even if relevant, its probative value is outweighed by the danger of unfair prejudice or misleading the jury. This court reviews a trial court's evidentiary rulings for abuse of discretion. State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), cert. denied, 523 U.S. 1008 (1998).

Evidence must be relevant to be admissible. ER 402. In a sexually violent predator civil commitment trial, evidence is relevant only if it increases or decreases the likelihood that a fact exists that is consequential to the jury's determination whether the respondent is a sexually violent predator. In re Det. of West, 171 Wn.2d 383, 397, 256 P.3d 302 (2011). This determination includes,

14

among other elements, whether the person is "likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18).

According to Dr. Packard's testimony, the VRAG-R measures the risk that an offender will return to a secure facility for a new violent offense, including a sex offense. The risk that Lough would reoffend by committing a sexually violent offense is consequential to the jury's determination of whether Lough is likely to engage in predatory acts of sexual violence if not confined in a secure facility. It is therefore relevant. The fact that the VRAG-R also includes other violent offenses that are not sex offenses does not make it irrelevant, but rather potentially prejudicial or misleading to the jury, addressed by Evidence Rule 403.

Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403. Dr. Packard explained to the jury that the VRAG-R results measured the risk that an offender would return to a secured facility for a new violent offense, including sex offenses. Dr. Packard explicitly explained that the VRAG-R results were "limited, because they don't really address the question that the statute is asking. . . . The VRAG-R is giving an estimate or an actual count of something else, the violent, including sexual reoffending. And while that's related, it is not the same thing as what the statute is asking for." In addition, Lough cross-examined Dr. Packard at length about the fact that VRAG-R includes violent offenses that are not sex offenses. In view of Dr. Packard's thorough explanation of the limitations of the VRAG-R, Lough has not

15

demonstrated that the trial court abused its discretion in determining that the VRAG-R evidence need not be excluded under ER 403.

In denying Lough's motion to exclude the VRAG-R, the trial court stated, "The specific criticisms by the respondents to experts, of Dr. Packard's use of the VRAG-R, and of the VRAG-R itself, can be assessed by the jury, just like they assess this kind of attack on other actuarial instruments." This ruling was entirely proper. The trial court acted within its discretion in admitting the VRAG-R.

Affirmed.

Becker, J.

WE CONCUR:

Spearman, J.

16