[No. 5087–1–II.   Division Two.   July 30, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK RUNIONS, *Appellant.*

*John L. Farra*, for appellant.

*Curtis M. Janhunen, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for respondent.

WORSWICK, J.—If a person convicted of a crime appeals and, while the appeal is pending, is compelled, under a grant of immunity pursuant to CrR 6.14, to testify against a codefendant concerning the transaction out of which the conviction arose, what is the status of the conviction and the State's power to punish? We hold, in this case of first impression in Washington, that although the conviction itself is not necessarily affected, all power of the State to punish terminates upon entry of the order granting immunity.

Defendant was convicted of second degree burglary and given a deferred sentence with conditions, including jail time. He filed a timely appeal. While the appeal was pending, the State apparently believed it was unable to prosecute a codefendant without defendant's testimony. Defendant claimed the privilege against self–incrimination. On the State's motion, the trial court granted an order pursuant to CrR 6.14 compelling defendant to testify with regard to the burglary transaction and granting him immunity from future prosecution with regard to the incident. Defendant contends that the conviction must be set aside and the charges dismissed.[1] Our research into the state

---

[1]Defendant relies heavily on *Frank v. United States,* 347 F.2d 486 (D.C. Cir. 1965). In *Frank* the defendant was granted immunity while his conviction was on appeal. The federal immunity statute involved was, in pertinent part, virtually identical to CrR 6.14. Although the court found no error warranting reversal on the merits, it ordered the conviction dismissed stating that any other construction would lead to potential abuse of the immunity statute. In reaching this result the court construed the language of the statute literally, but noted that it would not be bound to do so if the result reached would run counter to the intent and purpose of Congress.

"legislative" history of CrR 6.14 has yielded no substantial guidance.[2] The congressional history of comparable federal statutes, while interesting, is of no help in our analysis of a judicially promulgated state rule. *See State v. Fitzsimmons,* 94 Wn.2d 858, 620 P.2d 999 (1980). We are left to a literal application of CrR 6.14 which states:

> In any case the court on motion of the prosecuting attorney, may order that a witness shall not be excused from giving testimony or producing any papers, documents or things, on the ground that his testimony may tend to incriminate *or* subject him to a penalty or forfeiture; but *he shall not be prosecuted or subjected to criminal penalty or forfeiture* for or on account of any transaction, matter, or fact concerning which he has been ordered to testify pursuant to this rule.

(Italics ours.)

The rule speaks to what may happen after the grant of immunity. Use of the disjunctive "or" in two places fortifies our interpretation that even though prosecution has already occurred, with a resulting conviction, immunity nevertheless extends to punishment, or whatever remains of it, in the future.[3] We fail to see how a court can subsequently impose sentence on defendant. It follows that the power of the State to impose any punishment terminates upon the entry of the order granting immunity.

Defendant raises additional claims of error. We consider these moot. Because the disposition here was probation

---

Based on federal legislative history, the United States Supreme Court overruled *Frank,* holding that the *Frank* result was contrary to the intent of Congress in passing the immunity statute. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

[2]The task force comments merely indicate that the rule contemplates transactional immunity. *See* Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* (1971). Examination of such legislative history as can be found concerning the grand jury statute (RCW 10.27.130) upon which the rule was modeled discloses nothing helpful.

[3]A criminal appeal stays a judgment of conviction. RCW 9.95.062. CrR 7.3 requires the entry of a judgment, independent of a dispositional order, at the conclusion of a criminal trial.

under a deferred sentence which cannot continue,[4] the power of the court to do anything other than act upon an application for dismissal of the charges pursuant to RCW 9.95.240 has ended. *State v. Nelson,* 92 Wn.2d 862, 601 P.2d 1276 (1979).

Remanded, with directions to enter orders consistent with this opinion.

PETRIE, J., concurs.

REED, C.J. (dissenting)—While conceding that the language of CrR 6.14[5] is virtually identical to the federal witness immunity statute in *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967),[6] the majority's analysis fails to embrace nearly 90 years of decisional law interpreting and applying this federal counterpart to CrR

---

[4]Probation in and of itself is a form of punishment. *See Mempa v. Rhay,* 68 Wn.2d 882, 416 P.2d 104 (1966), *rev'd on other grounds,* 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967).

[5]CrR 6.14 states in relevant part: "[A] witness shall not be excused from giving testimony or producing any papers, documents or things, on the ground that his testimony may tend to incriminate or subject him to a penalty or forfeiture; but he shall not be prosecuted or subjected to criminal penalty or forfeiture for or on account of any transaction, matter, or fact concerning which he has been ordered to testify pursuant to this rule."

[6]The prototype for the immunity statute in *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), and for hundreds of other federal and state immunity statutes, was the compulsory testimony act, Act of February 11, 1893, 27 Stat. 443 (repealed 1978), cited in *Brown v. Walker,* 161 U.S. 591, 40 L. Ed. 819, 16 S. Ct. 644 (1896), which states in pertinent part:

> [N]o person shall be excused from attending and testifying or from producing books, papers, tariffs, contracts, agreements and documents . . . on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him, may tend to criminate him or subject him to a penalty or forfeiture. But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify . . .

*See Kastigar v. United States,* 406 U.S. 441, 447 n.21, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972). *See also* Note, *The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope,* 72 Yale L.J. 1568, 1611 (1963) for a listing of the federal immunity statutes and 8 J. Wigmore, *Evidence* § 2281, at 495 n.11 (1961), for a compilation of the state immunity statutes.

6.14. The essence of the majority's opinion is that Washington's legislative history of CrR 6.14 is too meager to be of help, hence, a literal interpretation of the rule is the only proper method of construction. I respectfully disagree.

It is the duty of the judiciary to merge a statute into the going system of law, always mindful of and directed by whatever policy or intent the lawmaker has seen fit to express. Courts are not constrained to a wooden and literal reading of a statute; when the statute or rule in question is substantially similar to a seasoned federal counterpart, as is CrR 6.14, the concomitant decisional law cannot be ignored in our analysis.

A basic tenet of statutory construction is that when the Legislature of a state adopts a similar statute from a foreign jurisdiction, it is then presumed that the Legislature also adopts the construction placed on it by that foreign jurisdiction. 2A C. Sands, *Statutory Construction* § 52.02–.03 (4th ed. 1973). The statutes need not be identical for this presumption to operate; the presumption

> varies in strength with the similarity of the language, the established character of the decisions in the jurisdiction from which the language was adopted and the presence or lack of other indicia of intention.

*Carolene Prods. Co. v. United States*, 323 U.S. 18, 26, 89 L. Ed. 15, 65 S. Ct. 1, 155 A.L.R. 1371 (1944). That the provision whose meaning we seek is a court rule adopted by our State Supreme Court rather than a statute enacted by the Legislature is of no moment in this regard; general principles of statutory construction are employed in the application and interpretation of rules promulgated by the Supreme Court.[7] *State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979). Washington courts and courts of

---

[7]The strength of this proposition, *i.e.*, presumed adoption of the construction placed upon a statute by its originator, is even more compelling when one considers that the members of the Supreme Court, persons highly trained in the law, were the promulgators. It follows naturally that they would be cognizant of decisions construing the original statute as well as the probable effect these decisions would have on the law of the adopting state.

other jurisdictions have employed this rule of statutory construction in the interpretation of state court rules and used federal decisional law as persuasive, if not in fact controlling, precedent. *See American Discount Corp. v. Saratoga W., Inc.,* 81 Wn.2d 34, 499 P.2d 869 (1972) (rules of civil procedure); *Assured Investors Life Ins. Co. v. National Union Assocs., Inc.,* 362 So. 2d 228, 231 (Ala. 1978) (rules of civil procedure); *State v. Darwin,* 29 Conn. Supp. 423, 290 A.2d 593, 595 (1972) (rules of criminal procedure).

This court need not rely solely on the nearly identical language of CrR 6.14 and the federal witness immunity statutes to be convinced that the Washington Supreme Court, when it promulgated CrR 6.14, was mindful that federal case law should and would be used to implement or explain the precise words. In May 1971, the Criminal Rules Task Force to the Washington Judicial Council adopted transactional immunity, rather than use or testimonial immunity[8] in the Proposed Rules of Criminal Procedure. The comment (see West Pub'g Co. edition) following the proposed rule, now CrR 6.14, indicates that this policy decision was made "by a close and divided vote" and in order to implement it the task force chose to use the "language approved by the Legislature in the Grand Jury bill (H.B. 175–1971)."

The legislative history of this grand jury bill, later codified in RCW 10.27, and of CrR 6.14 are closely entwined. During substantially the same time period the Washington State Judicial Council was commissioned by the Legislature and the Supreme Court to conduct studies and to make

---

[8]There are two types of immunity; use or testimonial immunity and transactional immunity. When a witness is granted use immunity, under most statutes, neither his testimony nor any information directly or indirectly derived from it may be used against him. However, he is still subject to prosecution if police can collect evidence from an independent source concerning any criminal activity in the transaction about which he testifies. On the other hand, a witness who is granted transactional immunity for his testimony is insulated from all future prosecution for any of the acts about which he is compelled to speak. *Eastham v. Arndt,* 28 Wn. App. 524, 624 P.2d 1159 (1981).

recommendations on both statutory schemes—the grand jury reform act (later changed to the Criminal Investigatory Act of 1971) and the rules of criminal procedure.[9] The witness immunity section of the criminal investigatory act, RCW 10.27.130, was passed by the Legislature in May of 1971; the decision of the Judicial Council to adopt the language of RCW 10.27.130 to effectuate the grant of transactional immunity under CrR 6.14 also occurred in May of 1971.[10]

Just as the Judicial Council's final recommendation to the Supreme Court to incorporate transactional rather than use immunity in CrR 6.14 was arrived at by a "close and divided vote," it appears that the Legislature's adoption of RCW 10.27.130 was also characterized by initial dissension and disharmony. The difficulties encountered by both the Legislature and the Judicial Council can be appreciated only by an understanding of the changes occurring in the federal witness immunity statutes during this time and the importance both bodies attached to these changes.

By enacting the Organized Crime Control Act of 1970, 18 U.S.C. § 6002, Congress repealed some 57 separate federal witness immunity statutes. See the listing following Organized Crime Control Act of 1970, § 201, 18 U.S.C.A. § 6001 (1971 Supp.). The result was to replace the grant of "transactional" immunity with the more limited "use" and derivative "use" immunity.[11] This congressional decision was in

---

[9]A random examination of the minutes of a few meetings of the Washington Judicial Council during this time reveals that both the proposed rules of criminal procedure and the proposed grand jury reform act were frequently discussed on the same agenda. State of Washington Judicial Council, minutes of the June 12, and November 20, 1970 meetings.

[10]RCW 10.27.130 states in pertinent part: ". . . but he shall not be prosecuted or subjected to criminal penalty or forfeiture for or on account of any transaction, matter, or fact concerning which he has been ordered to testify pursuant to this section."

[11]The applicable portion of 18 U.S.C. § 6002 states: ". . . but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the

apparent conflict with case law which appeared to hold that only full transactional immunity was sufficient to neutralize one's constitutional privilege against self-incrimination. *E.g., Counselman v. Hitchcock,* 142 U.S. 547, 35 L. Ed. 1110, 12 S. Ct. 195 (1892); *Brown v. Walker,* 161 U.S. 591, 40 L. Ed. 819, 16 S. Ct. 644 (1896). However, the constitutionality of the more narrow concept of use immunity embodied in 18 U.S.C.A. § 6002 was later upheld by the United States Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972).

The legislative history of RCW 10.27.130, the direct model for CrR 6.14, reveals that the Legislature originally intended to grant only use or testimonial immunity.[12] The language employed by our Legislature was a verbatim adoption of the relevant language in the federal Organized Crime Control Act of 1970, 18 U.S.C. § 6002. See footnote 11. House Judiciary Committee records disclose the primary reason for the legislative decision to replace the grant of use immunity, which was originally intended, with that of transactional immunity; *i.e.,* the Legislature was apprised of the very real possibility that use immunity might eventually be struck down as unconstitutional by the United States Supreme Court.[13] It was forewarned that a United States District Court for the Southern District of New York, in *In re Kinoy,* 326 F. Supp. 407 (S.D.N.Y. 1971), had already declared the federal immunity granted

---

witness in any criminal case . . ."

[12]House Bill 175, 42d Legislature (January 18, 1971), first House reading and referred to Committee on Judiciary; Senate Bill 239, 42d Legislature (January 27, 1971).

[13]Among the memoranda contained in the House Judiciary Committee's file on HB 175 is a letter dated February 23, 1971 addressed to the members of the Washington State Legislature and written by Christopher Bayley, then Prosecuting Attorney for King County. The letter, in part, informed the Legislature that the use immunity contemplated, which language was borrowed directly from the federal Organized Crime Control Act of 1970, might be constitutionally infirm. Bayley proposed replacing this use immunity with the federal language of transactional immunity, already known to be constitutional under *Counselman.*

pursuant to 18 U.S.C. § 6002 to be unconstitutional. In response, our Legislature chose to adopt instead the familiar federal transactional immunity language which had withstood constitutional scrutiny since *Counselman.* This change was effectuated in an amendment to House Bill 175 entitled Proposed Floor Amendment To Cure Prospective Unconstitutionality of Immunity Clause.[14]

What is glaringly apparent from this legislative history is the recognition of and strong adherence to the federal immunity statutes and the federal decisional law construing them.[15] Recognizing this fact along with the absence of any indicia of an intent to break away from the federal interpretation, and recognizing also the obvious similarity of the language of CrR 6.14 and the federal transactional immunity statute, I conclude that this court must presume that, upon enactment of CrR 6.14, the construction of its federal analogue was also adopted. I do not believe this court is free to ignore these facts and take refuge in literalism; we are not free to construe CrR 6.14 in the vacuum in which the majority views it.

---

[14] It was not until after this statute, RCW 10.27.130, became effective that the constitutionality of use immunity was upheld by the United States Supreme Court in *Kastigar v. United States,* 406 U.S. 441, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972).

[15] The legislative history of both CrR 6.14 and RCW 10.27.130 discloses references to the Model State Witness Immunity Act (1952). The pertinent language of this act, again, is almost identical to CrR 6.14 and the federal immunity statutes and reads in relevant part:

that person shall not be prosecuted or subjected to penalty or forfeiture for or on account of any transaction, matter or thing concerning which, in accordance with the order, he gave answer or produced evidence . . .

Commentary G provides an explanation for the model act's precise language:

The provision of the model act dealing with the scope of immunity is similar in language to a provision upheld in *Brown v. Walker,* 161 U.S. 591 (1896). That language is used here because its adequacy is clearly established. There seems to be little or no risk that a statute so phrased will be challenged for any defect in the scope of immunity. The language, if somewhat inartistic, is familiar to the courts and has been widely imitated in the statutes of states which have adopted the prevailing issues declared by *Counselman v. Hitchcock,* 142 U.S. 547, 35 L. Ed. 1110, 12 S. Ct. 195 (1892).

Therefore, I find the United States Supreme Court decision in *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) to be persuasive precedent in the instant case. (See majority opinion, footnote 1.) The *Katz* decision, in response to the same arguments presented to this court, held that immunity subsequently conferred on one already convicted and sentenced at the time the testimony at issue was given did not vacate the prior conviction; nor did it prohibit continued punishment based upon a "prior prosecution and adjudication of guilt" even though an appeal was pending. *Katz,* 389 U.S. at 349 n.3. *See, e.g., Reina v. United States,* 364 U.S. 507, 5 L. Ed. 2d 249, 81 S. Ct. 260 (1960).

Sound policy reasons support such a result. Immunity statutes are an attempt to balance two fundamental precepts in American jurisprudence; the Fifth Amendment's guaranty that no person "shall be compelled in any criminal case to be a witness against himself," and the legitimate social purpose of the State's need for information and concomitant ability to compel its citizens to appear at official proceedings and give information.[16] *See, e.g., State v. Parker,* 79 Wn.2d 326, 332, 485 P.2d 60 (1971). Witness immunity statutes are designed to accommodate these two interests. *See also State v. Matson,* 22 Wn. App. 114, 120, 587 P.2d 540 (1978).

In the case before us, the State has already met its burden and proved beyond a reasonable doubt that defendant

---

[16]The principle value suggested by the privilege against self–incrimination can be characterized as a sentiment that the government should "play fairly" with the accused. *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 12 L. Ed. 2d 678, 84 S. Ct. 1594 (1964). Our justice system is an accusatorial one, in which the government is required to obtain evidence of guilt by its own labors rather than from the accused through inquisitorial practices. The government cannot ease its prosecutorial burden by subjecting the accused to the "cruel trilemma of self–accusation, perjury or contempt", without violating this constitutionally protected privilege. *Murphy,* 378 U.S. at 55.

In tension with this principle is the settled notion and the concept which forms the heart of the judicial system that "'[T]he public . . . has a right to every man's evidence". *United States v. Nixon,* 418 U.S. 683, 709–10, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974).

Runions committed a crime. He was thereafter sentenced. Subsequently, while his appeal was pending, he was granted immunity pursuant to CrR 6.14 for his testimony against an alleged accomplice.[17] Because this testimony in no way led to his conviction or the sentence imposed, because the State has "played fairly," the immunity given to defendant Runions cannot be construed so broadly as to terminate this prior punishment to which his subsequent testimony in no way contributed. To interpret CrR 6.14 otherwise, or as the majority would have it, "all power of the State to punish terminates" (majority opinion, at 670), is to misconstrue the purpose of the immunity rule. Such a provision is not a reward for furnishing evidence to the State. Its function and utility exist only so long as defendant's testimony might incriminate him or tend to subject him to additional penalties. The majority opinion ignores this causal connection or link between defendant's testimony and his punishment. The fact that defendant was given a deferred sentence is not determinative; the possibility of a future revocation of defendant's probation and an imposition of sentence is strictly conditioned upon events unrelated to defendant's testimony at issue.

Even though CrR 6.14 grants full transactional immunity, this protection is not without limits, as Mr. Justice Holmes observed when applying the federal immunity statute:

> [T]he obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned.

---

[17]The report of proceedings relating to the scope of immunity granted pursuant to CrR 6.14 shows defendant Runions was advised that he would not be absolved from his prior conviction and punishment, only from prosecution and punishment should a new trial be necessary. Defendant has no argument that he was misled into believing otherwise.

*Heike v. United States,* 227 U.S. 131, 142, 57 L. Ed. 450, 33 S. Ct. 226 (1913). Under the facts presented here, and CrR 6.14 as it now reads, I think it is enough to terminate criminal proceedings and punishment if defendant is successful in having his conviction reversed, thus freeing him from the possibility of a new trial; defendant is not entitled to more.

A result of the majority's interpretation is to deprive the State of evidence which would otherwise be available. This is at best a disastrous result because disputes should be settled so far as they can by resort to the whole truth. *See United States v. Nixon,* 418 U.S. 683, 709–10, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974). Because defendant Runions' testimony cannot possibly tend to incriminate him for a crime for which he has already been tried, convicted and sentenced, and, because any punishment suffered by defendant was not suffered as a result of his subsequent testimony, then the only excuse for defendant's right to withhold "every man's evidence" ceases. It is then unnecessary, and even shocking, for the State to absolve defendant from previously incurred punishment as payment for testimony which defendant, as a citizen, is duty bound to reveal and for which any other citizen is merely compensated at the prevailing rate of $10 per day.

In summary the immunity to which one is entitled as an unwilling witness need be only as broad as the privilege overridden. The federal decisions demonstrate that the transactional immunity provided by CrR 6.14 is broader than is required by the constitution. It is safe to assume that had those responsible for formulating the rule been assured that use and derivative use immunity would pass constitutional muster, *Kastigar,* they would have adopted that form.

I can say it no better than did Justice Powell in *Kastigar,* 406 U.S. at 453:

The statute's [18 U.S.C. § 6002] explicit proscription of the use in any criminal case of "testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or

other information)" is consonant with Fifth Amendment standards. We hold that such immunity from use and derivative use is coextensive with the scope of the privilege against self–incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being "forced to give testimony leading to the infliction of 'penalties affixed to . . . criminal acts.'" Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in *any* respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness.

(Footnote omitted.)

The result reached by the majority highlights the need for a new rule, reading as does 18 U.S.C. § 6002.

Reconsideration denied August 23, 1982.

Review granted by Supreme Court November 8, 1982.