IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 79364-1-I |
| | ) | (consolidated with Nos. |
| A.M.-S., DOB: 12/17/08. | ) | 79365-9 & 79366-7) |
| | ) | |
| SERGIO MICHEL-GARCIA, | ) | DIVISION ONE |
| | ) | |
| Petitioner, | ) | |
| | ) | PUBLISHED OPINION |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 16, 2019 |
| | ) | |

ANDRUS, J. — Sergio Michel-Garcia, the father of A.M.-S., appeals a trial court order denying his request for derivative use immunity for statements he has made or may make during a psychological evaluation or any other court-ordered services during this dependency proceeding. We conclude the trial court does not have the inherent authority to grant Michel-Garcia derivative use immunity and therefore affirm.

## FACTS

In May 2018, the Department of Social and Health Services[1] filed a dependency petition on behalf of 10-year-old A.M.-S., alleging that the child's

---

[1] Effective July 1, 2018, the newly created Department of Children, Youth, and Families (DCYF) took over child welfare duties that were formerly the responsibility of the Department of

mother[2] and father, Sergio Michel-Garcia, had physically abused A.M.-S. and three other children living in the home. The Snohomish County Sheriff's Office opened a criminal investigation into the alleged abuse.

The parents agreed to the entry of a shelter care order removing the children from their home in May 2018, and an order finding the children dependent in August 2018.[3] Michel-Garcia denied the allegations of abuse, but "given the nature of the allegations and the possibility of criminal charges, the father agree[d] that he [wa]s unable to care for the child at this time and admit[ted] that if this matter proceeded to a [f]act-[f]inding hearing, the Department would more likely than not prove that the child [wa]s dependent by a preponderance of the evidence." He stipulated to a finding under RCW 13.34.030(6)(b)[4] that "the child is abused or neglected as defined in Chapter 26.44 RCW," and a finding under RCW 13.34.030(6)(c) that the child had no parent capable of adequately caring for the child.

Michel-Garcia also acknowledged that the services listed in section 4.5 of the order "would be required in order to reunite him with his child." One of the services listed, and in which he agreed and the court ordered him to participate, was a psychological evaluation with a parenting component. The court reserved on whether to order Michel-Garcia to undergo other services that the Department

Social and Health Services (DSHS). RCW 43.216.906. This opinion references the Department to mean DSHS before July 1, 2018, and DCYF after July 1, 2018.

[2] A.M.-S.'s mother has not participated in this appeal, and for that reason, we will refer to her only by her status, rather than by name.

[3] Under RCW 13.34.110(3), a parent may stipulate to the entry of an order of dependency and an order of disposition under RCW 13.34.130, subject to the approval of the court.

[4] RCW 13.34.030(6) provides four definitions for a "dependent child."

requested—namely, a domestic violence assessment and an anger management assessment.

In September 2018, Michel-Garcia asked the court to grant him use and derivative use immunity, under State v. Decker,[5] for any statements he made or information he provided in any services ordered by the dependency court. The Department notified the Snohomish County Prosecuting Attorney's Office of the father's immunity request, and the Prosecuting Attorney objected to a judicial grant of immunity broader than that statutorily authorized under RCW 26.44.053.[6] The Prosecuting Attorney argued that Michel-Garcia's Fifth Amendment right against self-incrimination could be adequately protected during any evaluation by this grant of statutory use immunity and the presence of counsel.

The dependency court denied Michel-Garcia's request for derivative use immunity. The court found that with a criminal investigation pending against him, Michel-Garcia voluntarily agreed to engage in psychological evaluations but wished to do so without waiving any Fifth Amendment rights. It also found that "[t]he custom in our juvenile court historically is to grant Decker motions [for immunity] if unopposed." It found no case law directly on point on the issue of whether a parent should be granted Decker immunity in a dependency case so he can engage in evaluations and treatment.

---

[5] 68 Wn. App. 246, 842 P.2d 500 (1992).

[6] The statute provides, in pertinent part, that "[n]o information given at any . . . examination of the parent or any other person having custody of the child may be used against such person in any subsequent criminal proceedings against such person or custodian concerning the alleged abuse or neglect of the child." RCW 26.44.053(2).

The court analyzed two cases on which Michel-Garcia relied—In re Dependency of Q.L.M., 105 Wn. App. 532, 20 P.3d 465 (2001), and In re Dependency of J.R.U.-S., 126 Wn. App. 786, 110 P.3d 773 (2005)—and found neither case applicable. The court noted that, contrary to Q.L.M., neither parent in this case had requested a protective order limiting the questions the parents could be forced to answer. It further concluded that under J.R.U.-S., court-ordered psychological evaluations are not testimonial in nature and, as a result, Decker did not apply.

The court reasoned:

> Parents always have the right to go to trial on termination and dependency petitions, and to have extended hearings, so the court can evaluate their statements in various ways. It is the parents' choice not to go to trial after consulting with their attorneys about what the best strategy is. In this case the strategy was to accept a 'b' and 'c' dependency without an explicit statement of facts. The parents are still free to have a termination trial if it comes to that. They can give their statements and be subject to cross-examination, and if they invoke the Fifth Amendment at trial, . . . the court can draw whichever conclusions it wishes to draw.

The court concluded that RCW 26.44.053(2), the statute granting use immunity to parents for statements made or information provided during dependency evaluations, combined with the parents' ability to simply refuse to answer questions that might elicit inculpatory information, sufficiently protected the parents' Fifth Amendment rights. The court ordered:

> Pursuant to RCW 26.44.053, no information given at any examinations of the parents (completed in association with this dependency action) may be used against the parents in subsequent criminal proceedings against the parents concerning the alleged abuse or neglect of the child. The Department shall not provide copies of the parents' evaluations to the Prosecuting Attorney, nor shall the Department discuss the evaluations/recommendations with the Prosecuting Attorney.

- 4 -

The court ordered Michel-Garcia to participate in a psychological evaluation and a domestic violence assessment pursuant to the terms of this protective order.

We granted Michel-Garcia's request for discretionary review of the order denying derivative use immunity.

## ANALYSIS

Michel-Garcia asks this court to hold that trial courts in Washington have the inherent authority to grant derivative use immunity to parents participating in dependency services when necessary to protect their Fifth Amendment rights against self-incrimination. But the Snohomish County Prosecuting Attorney asks the court to hold that immunity is solely a legislative prerogative and that, in the absence of statutory authorization to grant immunity, courts have no authority to grant immunity to any party or witness without prosecutorial consent. And the Department asks the court to dismiss the appeal as moot.

A. Mootness

The Department asks the court to dismiss the appeal as moot because Michel-Garcia has completed the court-ordered psychological evaluation. A case is moot if we can no longer provide effective relief. State v. T.J.S.-M., 193 Wn.2d 450, 454, 441 P.3d 1181 (2019). We conclude the case is not moot because the dependency is still ongoing and additional services may be ordered for which Michel-Garcia could seek derivative use immunity for any statements he may make while participating in these additional dependency services, not just the already completed psychological evaluation. The parties have fully litigated and briefed this issue, and it would be a waste of judicial resources to dismiss an appeal on an

issue that is likely to recur. See Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). We are in a position to provide the relief Michel-Garcia seeks, and the appeal is thus not moot.

Moreover, we may consider technically moot issues "when the court discerns a likelihood of recurrence of the same issue, generally in the framework of a 'continuing' or 'recurring' controversy, and 'public interest' in the controversy." In re Dependency of H., 71 Wn. App. 524, 527-28, 859 P.2d 1258 (1993) (quoting DeFunis v. Odegaard, 84 Wn.2d 617, 627, 529 P.2d 438 (1974)); see also State v. Hunley, 175 Wn.2d 901, 907, 287 P.3d 584 (2012) (case may be decided if it involves matters of continued and substantial public interest).

This case is appropriate for review under this alternative basis because the issue of a dependency court's inherent authority to grant derivative use immunity is not unique to Michel-Garcia. Because criminal investigations into alleged child abuse occur frequently, dependency courts would benefit from guidance on what authority they have to grant derivative use immunity. And future recurrence is not merely likely, it is probable. During the pendency of this appeal, the court received a motion for discretionary review in a different dependency proceeding in which another father sought review of an order denying his request for immunity. That motion became moot when the father relinquished his parental rights. Thus, this issue is one "capable of repetition, yet evading review." See Dependency of H., 71 Wn. App. at 528 (reaching issue of shelter care procedures because there was no possibility that the procedures could be reviewed by an appellate court before

mooted by subsequent hearings). Based on these considerations, we deny the Department's motion to dismiss the appeal and proceed to the merits.

B. <u>Immunity</u>

Michel-Garcia argues the trial court erred by denying his request for derivative use immunity. The Prosecuting Attorney asks the court to clarify that trial courts, absent statutory authority, cannot grant derivative use immunity in dependency proceedings over the objection of the State.[7] Resolving this issue requires us to review current immunity principles and the protection they afford before reaching the question of whether Washington trial courts have the inherent authority to grant derivative use immunity in dependency proceedings.

1. <u>Standard of Review</u>

Orders from dependency proceedings are generally reviewed for an abuse of discretion. <u>J.R.U.-S.</u>, 126 Wn. App. at 792 n.1. But in other contexts our Supreme Court has reviewed de novo the scope of a trial court's inherent authority. <u>In re Dependency of A.K.</u>, 162 Wn.2d 632, 644, 174 P.3d 11 (2007); <u>see also</u> <u>State v. Gassman</u>, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012). Thus, we review de novo whether superior courts have inherent authority to grant derivative use immunity.

2. <u>Scope of Michel-Garcia's Right Against Self-Incrimination</u>

The trial court concluded that Michel-Garcia's Fifth Amendment rights were not at risk in this case because participation in a psychological evaluation was not "compelled" or sworn testimony. We disagree with this legal conclusion.

---

[7] The Department has taken no position on this legal issue.

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution both provide that no person may be compelled in any criminal case to give evidence or be a witness against himself. The state protection against self-incrimination afforded in article I, section 9 is co-extensive with the protection of the Fifth Amendment. State v. Earls, 116 Wn.2d 364, 374-75, 805 P.2d 211 (1991). Both constitutional provisions permit a person to refuse to testify at a criminal trial or to refuse to answer official questions in any other proceeding where the answer might tend to incriminate them in future criminal proceedings. State v. King, 130 Wn.2d 517, 523-24, 925 P.2d 606 (1996). The privilege not only extends to answers that would in themselves support a conviction but also embraces any statements "which would furnish a link in the chain of evidence needed to prosecute" a person for a crime. Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 95 L. Ed. 1118 (1951).

The privilege against self-incrimination may be invoked whenever circumstances indicate that a real and substantial danger of incrimination exists; it is not limited to circumstances in which a person is in custody or under compulsion to speak. J.R.U.-S., 126 Wn. App. at 793; accord State v. Diaz-Cardona, 123 Wn. App. 477, 491, 98 P.3d 136 (2004) (court cannot require juvenile to participate in special sex offender disposition evaluation before sentencing because it violates the juvenile's privilege against self-incrimination). Although a parent participating in a dependency evaluation is not under compulsion to speak, and therefore has no constitutional right to counsel during the evaluation, there is nevertheless a real

and substantial danger of incrimination during such an evaluation, creating a threat to that parent's Fifth Amendment rights. J.R.U.-S., 126 Wn. App. at 798-800.

In this case, the trial court ordered Michel-Garcia to participate in services, including a psychological evaluation with a parenting component and a domestic violence assessment. Dependency courts are statutorily required to conduct review hearings to determine a parent's compliance with court-ordered services. RCW 13.34.138. A parent's level of compliance determines whether the child is reunified with that parent or whether the parent could lose his parental rights. RCW 13.34.141. Therefore, although Michel-Garcia could decline to answer certain incriminating questions during the evaluation, he does so at the risk of losing his parental rights.

The trial court's findings portend the possibility of this adverse outcome:

> There is an argument that parents should be able to engage in services which are remedial without fear of prosecution and the denial of being able to engage in these treatments and evaluations, particularly post finding of dependency, which we are here, presents the parents with [a] Hobson's choice.

> The choice is either successfully completing requirements of the evaluations and treatment and incriminating themselves in subsequent criminal proceedings or refusing to make the required admissions and be[ing] found in denial and noncompliance, with the knowledge that such refusal would be used as a basis for either not returning the children or termination of parental rights.

> That is because providers and the state habitually say that if the parent does not agree that they committed the act on which the underlying dependency should have been founded, then they are obviously in denial and are not going to have their children back.

We have recognized that once a party invokes the Fifth Amendment privilege against self-incrimination, the trier of fact is entitled to draw an adverse inference from the refusal to testify. King v. Olympic Pipeline Co., 104 Wn. App.

338, 355-56, 16 P.3d 45 (2000). We agree with Michel-Garcia that such a risk is present in this case as well. Should he participate in the evaluation but refuse to discuss the injuries his child sustained or his past methods of disciplining the child, he is at risk that the evaluator, the Department, and ultimately the trial court could draw the inference that Michel-Garcia has committed child abuse and has parental deficiencies precluding reunification with the child. As the trial court recognized, "[a] parent can go to the evaluation and take their chances with the answers they give. The court can draw any conclusion [it] wish[es] from those answers after they come from the evaluator." These factual findings support only one conclusion—that the psychological evaluation or other parenting assessments that Michel-Garcia has undergone or may be ordered to undergo in this dependency proceeding threaten his right against self-incrimination.

### 3. Washington's Statutory Immunity

Recognizing this risk to a parent's constitutional rights, the legislature enacted RCW 26.44.053(2) to allow a court to grant limited immunity to parents who participate in psychological evaluations in dependency proceedings:

> At any time prior to or during a hearing in [a case in which it is alleged that a child has been subjected to child abuse or neglect], the court may, on its own motion, or the motion of the guardian ad litem, or other parties, order the examination by a physician, psychologist, or psychiatrist, of any parent . . . , if the court finds such an examination is necessary to the proper determination of the case. . . . The physician, psychologist, or psychiatrist conducting such an examination may be required to testify concerning the results of such examination . . . . No information given at any such examination of the parent . . . may be used against such person in any subsequent criminal proceedings against such person . . . concerning the alleged abuse or neglect of the child.

(Emphasis added.)

Michel-Garcia contends this statutory grant of immunity is inadequate to protect him because it only prohibits the use of statements he directly makes to the evaluator and not information that may be derived from such statements. We agree.

> Immunity statutes are an attempt to balance two fundamental precepts in American jurisprudence; the Fifth Amendment's guaranty that no person "shall be compelled in any criminal case to be a witness against himself," and the legitimate social purpose of the State's need for information and concomitant ability to compel its citizens to appear at official proceedings and give information. Witness immunity statutes are designed to accommodate these two interests.

State v. Runions, 100 Wn.2d 52, 57, 665 P.2d 1358 (1983) (quoting State v. Runions, 32 Wn. App. 669, 678, 649 P.2d 144 (1982) (Reed, J., dissenting)). The adequacy of a grant of immunity, therefore, must be tested against the requirements of the Fifth Amendment, which mandates that the grant be coextensive with the scope of the privilege against self-incrimination. State v. Carroll, 83 Wn.2d 109, 111, 515 P.2d 1299 (1973).

There are three different types of immunity recognized in the case law. "Transactional immunity" is the broadest, prohibiting prosecution for any matter about which the witness testifies or gives a statement. J.R.U.-S., 126 Wn. App. at 797. "Use immunity" prohibits the direct use of a person's compelled statements in a criminal trial, id., but allows the State to prosecute that person with evidence collected from an independent source, Runions, 100 Wn.2d at 55. "'Derivative use immunity' bars the use of any evidence derived from immunized statements." J.R.U.-S., 126 Wn. App. at 797.

- 11 -

Use immunity "is not as comprehensive as the protection afforded by the Fifth Amendment privilege since it does not preclude the derivative use of the fruits of the compelled testimony as investigatory leads which might supply other means of incriminating the witness." Eastham v. Arndt, 28 Wn. App. 524, 529, 624 P.2d 1159 (1981). Thus, a combination of use and derivative use immunity is necessary to protect a person's Fifth Amendment privilege. Kastigar v. United States, 406 U.S. 441, 459, 92 S. Ct. 1653, 32 L. Ed. 2d 212 (1972); see also J.R.U.-S., 126 Wn. App. at 797 (acknowledging that transactional immunity provides broader protection than Fifth Amendment but use immunity alone is insufficient).

In J.R.U.-S., this court concluded that RCW 26.44.053(2) only allows a grant of use immunity and does not provide immunity for evidence derived from immunized statements. 126 Wn. App. at 798. "The statute thus provides less comprehensive immunity than the Fifth Amendment." Id. Accordingly, we conclude that, by itself, RCW 26.44.053(2) is insufficient to guarantee Michel-Garcia's constitutional right against self-incrimination and that the trial court erred in concluding otherwise.

4. Inherent Authority of Washington Superior Courts

The more difficult question is what authority, if any, the trial court has to grant broader immunity than authorized by the legislature when the prosecuting attorney objects, as in this case. Michel-Garcia contends that trial courts have the inherent authority to grant derivative use immunity to overcome the deficiencies with RCW 26.44.053(2). He relies on State v. Escoto, 108 Wn.2d 1, 735 P.2d 1310

(1987), State v. Decker, 68 Wn. App. 246, 842 P.2d 500 (1992),[8] Q.L.M., and J.R.U.-S., for his argument. But Escoto did not address immunity at all; Decker is limited to its facts; Q.L.M. did not involve derivative use immunity, and to the extent this court discussed our courts' authority to grant this type of immunity in J.R.U.-S., it did so in dicta.

In Escoto, a trial court ordered a 12-year-old with multiple convictions to undergo a psychological evaluation to help the judge determine the appropriate disposition. 108 Wn.2d at 2-3. The trial court further ordered that "any evaluation would relate only to matters for which [Escoto] had been found guilty and not any unadjudicated charge." Id. at 3. Escoto objected to the evaluation, arguing that it violated his Fifth Amendment privilege against self-incrimination. Id. at 3, 6. The trial court reasoned that its need for adequate information to determine an appropriate disposition outweighed the public policy regarding the Fifth Amendment privilege since Escoto had already been convicted. Id. at 3. It granted Escoto the right to counsel at the evaluation. Id. Based on the evaluation, the trial court imposed a sentence outside the standard range. Id. at 4.

Our Supreme Court affirmed, concluding that the trial court was careful to protect Escoto's Fifth Amendment privilege by limiting use of the evaluation to matters already adjudicated and by permitting counsel to be present. Id. at 2, 7. The Supreme Court simply did not address whether the trial court could grant use or derivative use immunity to Escoto; no one sought such immunity for Escoto.

---

[8] Review denied, 121 Wn.2d 1016, 854 P.2d 42 (1993).

Then, in Decker, a juvenile pleaded guilty to assault and was ordered to undergo a psychological evaluation before his disposition hearing. 68 Wn. App. at 247. Decker objected to the evaluation on the ground that he might make statements that would incriminate him in other, unadjudicated and uncharged, matters. Id. at 247-48. The trial court ordered the juvenile to participate in the pre-disposition psychological evaluation and prohibited counsel from attending. Id. at 248. The trial court also ordered that "'any discussion with [the] evaluator in reference to matters that have not been adjudicated shall be granted use immunity.'" Id. On appeal, Decker argued that the trial court erred by compelling him to attend the evaluation without counsel and by granting him use immunity over the prosecutor's objection. Id. at 247.

This court held that, absent a showing of special circumstances, Decker did not have a right to counsel during the evaluation. Id. at 251. It also concluded that "a trial court, under these circumstances, has the inherent authority to issue this type of protective order." Id. at 252. We reasoned that the protective order was similar to the order upheld in Escoto, and that "the Escoto court would sanction the trial court's use of immunity in this situation." Decker, 68 Wn. App. at 253. The Decker court did not distinguish between use and derivative use immunity but did state that the prosecutor remained "at liberty to prosecute matters which were discovered independently of the evaluation but which also may have been discussed during the evaluation, so long as those discussions did not lead to the discovery of any evidence." Id. at 252-53.

But Decker has been limited to the circumstances presented in that case—a predisposition evaluation in a juvenile offender matter during which only questions relating to adjudicated matters are posed and which counsel is prohibited from attending. See Q.L.M., 105 Wn. App. at 543-44. In Q.L.M., a juvenile who was both a dependent child and a convicted sex offender, sought to enjoin the Department from releasing to a county prosecutor the results of his sexually aggressive youth evaluation. Id. at 535-36. The trial court, relying on Decker, entered a protective order prohibiting the prosecutor from receiving information regarding this evaluation, despite a statute requiring the Department to refer any case of a sexually violent predator to the prosecutor. Id. at 535. The order "purported to apply both retroactively and to all future counseling and treatment records, prohibiting their use for criminal investigation or prosecution."[9] Id. at 543 n.24. The King County Prosecutor and the Department appealed the entry of this protective order. Id. at 536.

This court reversed, holding that the order "impermissibly impinge[d] on the prosecutorial function," and exceeded the exception approved in Decker and, as a result, was unauthorized by Decker's holding. Id. at 544. It explicitly noted that "Decker created a single narrow exception to the normal rule that granting immunity is a prosecutorial executive function." Id.

This court subsequently reiterated this limitation in Diaz-Cardona. 123 Wn. App. at 488-89. In that case, we held that a court could not compel a juvenile to

---

[9] A second protective order, granting derivative use immunity, was not challenged on appeal. Q.L.M., 105 Wn. App. at 543 n.24.

participate in a Special Sex Offender Disposition Alternative (SSODA) evaluation, even with a Decker protective order in place, because statements made in the evaluation could be used to impose a disposition beyond the standard range, thereby violating the juvenile's Fifth Amendment rights. Id. at 491.

Following Diaz-Cardona, this court decided J.R.U.-S. Similar to this case, the parents were the subjects of a criminal investigation and involved in dependency proceedings. 126 Wn. App. at 790. The trial court entered an order allowing the parents' counsel to attend any court-ordered psychological evaluations. Id. The Department appealed this order, and we affirmed, holding that the trial court did not abuse its discretion in entering this order as a method of protecting the parents' right against self-incrimination. Id. at 799-801.

This court recognized that counsel's presence at such evaluations could undermine their efficacy. Id. at 800. This court recommended that

> [t]he Department's concerns can be alleviated in future cases without sacrificing parents' Fifth Amendment rights. The Legislature could broaden the statutory immunity to include derivative use immunity, or superior courts could issue protective orders granting derivative use immunity as they did in State v. Decker and Q.L.M. Both solutions would make it unnecessary to have counsel present, thereby facilitating candid disclosures in evaluations.

Id. at 800-01 (footnotes and citations omitted). Despite what appears to be precatory language, this court added:

> We hold, however, that when Fifth Amendment rights are threatened, the courts should enter protective orders granting additional immunity rather than allowing counsel to attend psychological evaluations.

Id. at 790. It is this sentence on which Michel-Garcia relies to argue that superior courts have the inherent authority to grant derivative use immunity. The

Prosecuting Attorney asks us to revisit this language in J.R.U.-S. and make it clear that any discussion of derivative use immunity in J.R.U.-S. is not its actual holding.

A "holding" is a "court's determination of a matter of law pivotal to its decision." BLACK'S LAW DICTIONARY 879 (11th ed. 2019). Dicta, on the other hand, is a remark made by a court in pronouncing its opinion suggested by the case but not necessarily essential to its determination. Pierce County v. State, 150 Wn.2d 422, 435 n.8, 78 P.3d 640 (2003); see also "Obiter dictum," BLACK'S LAW DICTIONARY at 569. While courts must give precedential weight to holdings, they may clarify dicta-created ambiguities. State ex rel. Evergreen Freedom Found. v. Nat'l Educ. Ass'n, 119 Wn. App. 445, 451-52, 452 n.8, 81 P.3d 911 (2003).

We take this opportunity to clarify J.R.U.-S., and conclude that this court's statement that courts "should" grant derivative use immunity rather than permit counsel to attend evaluations, is dicta. The sole issue presented in J.R.U.-S. was "whether the courts in the dependency proceedings abused their discretion when they allowed the parents' counsel to attend court ordered psychological evaluations." 126 Wn. App. at 790. We concluded the court did not abuse its discretion in doing so. Id. A statement as to what courts "should" do in the future was unnecessary to our ultimate decision. Thus, it is dicta. See In re the Marriage of Rideout, 150 Wn.2d 337, 354, 77 P.3d 1174 (2003); Ruse v. Dep't of Labor & Indus., 138 Wn.2d 1, 8-9, 977 P.2d 570 (1999) (where unnecessary to reach an issue, a court's discussion of that issue is dicta).

Escoto, Decker, Q.L.M., and J.R.U.-S. do not support Michel-Garcia's argument that trial courts have the inherent authority to grant derivative use

- 17 -

immunity to parents undergoing evaluations in dependency proceedings. We thus decide the issue as a matter of first impression.

The Prosecuting Attorney advances two arguments for the denial of derivative use immunity. First, the Prosecuting Attorney argues that historically, immunity has been solely a legislative, and not a judicial, prerogative. Second, the Prosecuting Attorney maintains that grants of immunity affect substantive rights and thus lie outside the limits of trial courts' inherent authority to determine court procedures.

a. Immunity as a Legislative Prerogative

The Prosecuting Attorney argues that immunity—whether transactional, use, or derivative use—can only be authorized by the state legislature and exercised at the prosecutors' discretion. The historical evidence supports this argument, in part.

Throughout this state's history, it has been the state legislature, and not the judiciary, that has decided to whom to grant transactional immunity from prosecution. Since 1854, the Washington legislature has given trial courts the authority to compel witnesses to testify in criminal proceedings. LAWS OF 1854, p. 116, § 93 (codified as RCW 10.52.040). And since 1909, RCW 10.52.090 has provided for transactional immunity by ensuring that a person compelled to testify "shall not be prosecuted or subjected to a penalty or forfeiture for or on account of any action, matter or thing concerning which he [or she] shall so testify." LAWS OF 1909, ch. 249, § 39; Carroll, 83 Wn.2d at 113. The legislature later extended this statutory transactional immunity to testimony before grand juries and special

inquiry judges. LAWS OF 1971, 1st Ex. Sess., ch. 67, § 13 (codified as RCW 10.27.130); Runions, 32 Wn. App. at 676 (Reed, J., dissenting), rev'd, 100 Wn.2d 52.

Our Supreme Court then promulgated a court rule recognizing the existence of transactional immunity for witnesses in criminal trials and creating a process for a prosecutor to seek a court order of immunity. Runions, 100 Wn.2d at 55. CrR 6.14[10] provides:

> In any case the court on motion of the prosecuting attorney may order that a witness shall not be excused from giving testimony or producing any papers, documents or things, on the ground that such testimony may tend to incriminate or subject the witness to a penalty or forfeiture; but the witness shall not be prosecuted or subjected to criminal penalty or forfeiture for or on account of any transaction, matter, or fact concerning which the witness has been ordered to testify pursuant to this rule. The witness may nevertheless be prosecuted for failing to comply with the order to answer, or for perjury or the giving of false evidence.

(Emphasis added.) Because the rule's language merely parrots the substantive language of RCW 10.52.090, the Supreme Court's promulgation of CrR 6.14 was an exercise of its procedural rule-making power and not the grant of a substantive right that did not otherwise exist by statute. See RCW 2.04.190 (supreme court has power to proscribe rules for procedure); RCW 2.28.150 (when jurisdiction is conferred on a court by the constitution or statute, but no procedure is prescribed, courts may adopt "any suitable process or mode of proceeding").

---

[10] This rule came about when the legislature and the Supreme Court commissioned the Washington State Judicial Council to conduct studies and make recommendations on both statutory schemes of immunity and rules of criminal procedure. Runions, 32 Wn. App. at 675-76 (Reed, J., dissenting). "According to drafters' comments by the Washington Judicial Council Criminal Rules Task Force, CrR 6.14 reflects the policy decision to provide for transaction immunity." 4A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CrR 6.14 author's cmts. at 462 (7th ed. 2008 Update).

Under CrR 6.14, a defendant has no right to demand, and a court has no authority to grant, immunity to an exculpatory defense witness over a prosecutor's objection. State v. Fish, 99 Wn. App. 86, 93, 992 P.2d 505 (1999); State v. Carlisle, 73 Wn. App. 678, 681, 871 P.2d 174 (1994). In Carlisle, we held that even if a court were to find that a prosecutor committed misconduct and intimidated a witness to the point that the witness declined to testify—thereby violating a defendant's constitutional right to due process—the remedy was not a grant of immunity but was instead dismissal of the criminal charge. 73 Wn. App. at 681; see also United States v. Lord, 711 F.2d 887, 891-92 (9th Cir. 1983).

The legislature's affirmative act of providing transactional immunity in specific situations and our courts' refusal to grant immunity under CrR 6.14 in the absence of a request by a prosecutor is strong historical evidence that grants of transactional immunity are solely a legislative prerogative. Such a conclusion makes sense because a grant of transactional immunity amounts to a decision by the legislature to exclude an entire class of individuals from the application of our state's criminal laws. See Runions, 32 Wn. App. at 674 n.8 (Reed, J., dissenting) ("[A] witness who is granted transactional immunity for his testimony is insulated from all future prosecution for any of the acts about which he is compelled to speak.").

But it does not necessarily follow that grants of use and derivative use immunity are solely legislative prerogatives. Our legislature has enacted statutes

granting use immunity in limited circumstances.[11]  Currently, in addition to RCW 26.44.053(2), we have found only one other statute that extends immunity to a party or witness.  Under RCW 6.32.200, if a debtor answers questions posed during supplemental proceedings, those answers may not be used against that debtor in a criminal proceeding.  But this statute provides only use immunity and, as a result, a judgment debtor can legally refuse to answer questions to protect himself against self-incrimination.  Eastham, 28 Wn. App. at 530.  As the Prosecuting Attorney notes, our state legislature has never passed a statute granting derivative use immunity.

Without historical evidence to guide us, we must turn to the Prosecuting Attorney's second argument—that a grant of use or derivative use immunity affects substantive rights and is thus outside the trial courts' inherent authority to set its own procedures.

b.  Courts' Inherent Authority to Create Exclusionary Rules

Washington courts derive their judicial power from article IV of the state constitution and from the legislature under RCW 2.04.190.  Spratt v. Toft, 180 Wn. App. 620, 634, 324 P.3d 707 (2014).  "The inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; the power to promulgate rules for its practice, and the power to provide process where none exists."  In re Bruen, 102 Wash. 472, 476, 172 P. 1152 (1918).

---

[11] For a comprehensive list of Washington statutes granting immunity (many of which no longer exist), see 8 JAMES HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2281 n.11, at 507 (John T. McNaughton rev. ed. 1961).

The inherent power of article IV includes the power to govern court procedures, City of Fircrest v. Jensen, 158 Wn.2d 384, 394, 143 P.3d 776 (2006), including the rules of evidence, State v. Gresham, 173 Wn.2d 405, 431, 269 P.3d 207 (2012). Moreover, the judiciary's province is procedural and the legislature's is substantive. Jensen, 158 Wn.2d at 394. Although a clear line of demarcation cannot always be delineated between what is substantive and what is procedural, "[s]ubstantive law prescribes norms for societal conduct and punishments for violations thereof. It thus creates, defines, and regulates primary rights. In contrast, practice and procedure pertain to the essentially mechanical operations of the courts by which substantive law, rights, and remedies are effectuated." State v. Smith, 84 Wn.2d 498, 501, 527 P.2d 674 (1974).

The authority to admit or exclude evidence is a procedural matter controlled by the courts. Gresham, 173 Wn.2d at 431. At least one court has held that use and derivative use immunity are evidentiary rules that fall within a courts' inherent authority to govern the admission or exclusion of evidence. State v. Belanger, 2009-NMSC-025, ¶¶ 13-21, 146 N.M. 357, 361-62, 210 P.3d 783 (New Mexico rules of evidence govern use and derivative use immunity because they are testimonial privileges).[12] The Belanger court relied on Simmons v. United States, 390 U.S. 377, 393-94, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968), for the proposition that courts have the inherent judicial power to exclude inculpatory evidence in certain contexts to protect a defendant's constitutional rights. 2009-NMSC-025,

---

[12] But see Andy Scholl, State v. Belanger and New Mexico's Lone Stance on Allowing Defense Witness Immunity, 40 N.M. L. Rev. 421 (2010).

¶ 28, 146 N.M. at 364. In <u>Simmons</u>, the Court created an exclusionary rule that precludes a prosecutor from offering at trial a defendant's testimony from a pretrial suppression hearing. 390 U.S. at 393-94. Although the <u>Simmons</u> court did not base its holding on the courts' inherent authority to grant immunity, it arguably supports the proposition that courts may prevent the State from presenting evidence in criminal proceedings when necessary to protect a defendant's constitutional right to remain silent.

But federal courts have rejected such an expansive reading of <u>Simmons</u>. In <u>United States v. Quinn</u>, 728 F.3d 243, 255 (3d Cir. 2013), the Third Circuit held that <u>Simmons</u> does not support the existence of an inherent judicial power to grant witness immunity. Because prosecutors, and not courts, are in the best position to decide prosecutorial tradeoffs associated with grants of use immunity, the <u>Quinn</u> court deemed it inappropriate to read <u>Simmons'</u> exclusionary rule as extending a court's power to invade prosecutorial decisions. <u>Id.</u> at 254-55. We find this reasoning compelling.

Unlike the situation in <u>Simmons</u>, a grant of derivative use immunity to anyone, whether party or witness, impacts more than just the presentation of evidence in a criminal trial. It would govern how law enforcement must investigate crime. As the Prosecuting Attorney points out, a grant of derivative use immunity would require law enforcement to take steps to protect existing evidence to prove that none of it was derived from immunized evidence. But because state prosecuting attorneys are not parties to dependency proceedings, and the pleadings in such cases are filed under seal, they would not necessarily be

informed of a request for derivative use immunity and may only learn that a court granted it after-the-fact. As a result, neither the police nor prosecutor may be aware of the need to take these protective steps, causing the prosecution to fail to meet its "'heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.'" See State v. Bryant, 97 Wn. App. 479, 485, 983 P.2d 1181 (1999) (quoting Kastigar, 406 U.S. at 461-62).

Many of the State's likely witnesses in a child abuse prosecution, such as the abused child, the other parent, and other siblings, are usually parties to the dependency proceeding and would have access to any evaluations ordered by the dependency court. When a witness has been exposed to immunized statements, their testimony may have to be examined on a line-by-line basis so the prosecution can demonstrate that no use was made of any immunized statements. United States v. North, 285 U.S. App. D.C. 343, 372, 910 F.2d 843, modified on other grounds on rehearing, 287 U.S. App. D.C. 146, 920 F.2d 940 (1990). So a grant of derivative use immunity would inevitably have a significant impact on a State's ability to prosecute a parent for child abuse under these circumstances. It is for this reason that we have stated that immunity in general is "only a prosecutorial tool." State v. Matson, 22 Wn. App. 114, 120, 587 P.2d 540 (1978).

Moreover, New Mexico's Supreme Court appears to be the only state court in the country to conclude that judges have the inherent authority to grant derivative use immunity to a witness. See generally Andy Scholl, State v. Belanger and New Mexico's Lone Stance on Allowing Defense Witness Immunity, 40 N.M. L. Rev. 421 (2010); accord Quinn, 728 F.3d at 253 (holding that immunity is a

- 24 -

creature of the legislature, "the body that defines criminal offenses and their sanctions"); Harding v. People, 708 P.2d 1354, 1358 (Colo. 1985) (rejecting the concept of judicial immunity, holding the only immunity available to a witness is under the state's immunity statute which can be granted by a court only at the prosecution's request); State v. Montgomery, 467 So. 2d 387, 395 (Fla. Dist. Ct. App. 1985) (courts do not have inherent power to grant use immunity to defense witnesses over state's objection).

The weight of this authority leads us to conclude that use and derivative use immunity are not evidentiary privileges within the inherent authority of our trial courts but are, instead, matters of substantive law falling within the legislature's powers.

In this case, the trial court crafted a protective order that limited the Department's ability to disseminate or discuss the psychological report with the Prosecuting Attorney:

> Pursuant to RCW 26.44.053, no information given at any examinations of the parents (completed in association with this dependency action) may be used against the parents in subsequent criminal proceedings against the parents concerning the alleged abuse or neglect of the child. The Department shall not provide copies of the parents' evaluations to the Prosecuting Attorney, nor shall the Department discuss the evaluations/recommendations with the Prosecuting Attorney.

Neither Michel-Garcia nor the Prosecuting Attorney challenged this aspect of the protective order.

We hold that the grant of use and derivative use immunity is solely a legislative, and not a judicial, prerogative. We further hold that, in the absence of a statute, trial courts do not have the inherent authority to confer derivative use

- 25 -

immunity on a parent in a dependency proceeding over the objection of the prosecutor. The trial court did not err in rejecting Michel-Garcia's request for derivative use immunity.

We therefore affirm.

WE CONCUR:

Andrus, J.

Mann, ACJ

Appelwick, CJ